Ogden vs. The City of Madison.

OGDEN, Plaintiff in error, vs. THE CITY OF MADISON, Defendant in error.

111    413
113    2 24

*September 9— October 15, 1901.*

*Municipal corporations: Madison city charter: Disorderly houses: Offense punishable also under statute: Recovery of penalty: Jury trial: Constitutional law.*

1. Sec. 3, subch. IV, ch. 36, Laws of 1882, gives the common council of Madison power to enact ordinances for the government and good order of the city, for the suppression of vice and immorality, for the prevention of crime, etc., declaring and imposing penalties, and to enforce the same against any person violating such ordinances. Subd. 1 of the same section grants the power to provide for the abatement of nuisances, and subd. 3 to *suppress and restrain* disorderly houses and houses of ill-fame; and subd. 5 declares houses of ill-fame and disorderly houses to be nuisances. *Held,* that the city has power thereunder to prescribe and enforce a penalty against the keeper of a disorderly house or house of ill-fame.

Ogden vs. The City of Madison.

2. A prosecution by the city in such case to recover the penalty imposed by an ordinance against disorderly houses is a prosecution for an offense against a mere police regulation for the good order of the city, and not a prosecution for a misdemeanor, even though the same act constitutes a misdemeanor under the general statutes; and the defendant is not entitled to a jury trial under the constitutional guaranty, but may be proceeded against summarily.

ERROR to review a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This action was commenced in the municipal court of Dane county on a complaint charging the plaintiff in error with having been guilty of "keeping and maintaining a disorderly house and house of ill-fame," contrary to the provisions of sec. 4, ch. 7, of the ordinances of the city of *Madison.* A warrant for his arrest was issued, and he was arrested and taken before the court. A plea of not guilty was entered, and a trial was had before the court without a jury. He was found guilty, and was adjudged to pay a fine of $100 and costs, or, in default of the payment of such fine and costs, that he be committed to the county jail of Dane county at hard labor until said fine and costs were paid,— not, however, to exceed ninety days. An appeal was taken to the circuit court, where a trial was had before a jury, and a verdict of guilty rendered. A similar fine, with costs, was imposed, with imprisonment in the county jail not exceeding three months in case of nonpayment. The accused brings the case to this court by writ of error.

*H. W. Chynoweth,* for the plaintiff in error, to the point that plaintiff in error could not be convicted of this offense by the court alone without a jury, cited secs. 3294, 3303, Stats. 1898; *State v. Lockwood,* 43 Wis. 403; *In re Staff,* 63 Wis. 285; *Sutton v. McConnell,* 46 Wis. 269; *Boscobel v. Bugbee,* 41 Wis. 59; *Oshkosh v. Schwartz,* 55 Wis. 483; *State v. Grove,* 77 Wis. 448; *Milwaukee v. Simons,* 93 Wis. 576; *Milwaukee v. Weiss,* 93 Wis. 654; *State v. Hayden,* 32 Wis. 663; 1 Dillon, Mun. Corp. (4th ed.), §§ 432, 434, 439; *State*

*v. Moss*, 2 Jones, Law, 66; *Rector v. State*, 6 Ark. 187; *Slaughter v. People*, 2 Doug. (Mich.), 334; *Welch v. Stowell*, 2 Doug. (Mich.), 332; *Burns v. La Grange*, 17 Tex. 415; *Warren v. People*, 3 Parker, Cr. 544; *Zylstra v. Charleston*, 1 Bay, 382; *Barter v. Comm.* 3 Pa. 253; *Byers v. Comm.* 42 Pa. St. 89; *Callan v. Wilson*, 127 U. S. 540; *Durkee v. Janesville*, 28 Wis. 464.

*John A. Aylward*, city attorney, for the defendant in error, argued, among other things, that an offense against a city ordinance, even though the acts complained of also constitute a crime, misdemeanor, or common-law or indictable offense, may be disposed of in the first instance summarily without a jury. *State ex rel. Milwaukee v. Newman*, 96 Wis. 258, 266; *Platteville v. McKernan*, 54 Wis. 487; *Platteville v. Bell*, 43 Wis. 488; Anderson, Law Dict. "QUASI-CRIMES;" *Wiggins v. Chicago*, 68 Ill. 372, 375; *State v. Lee*, 29 Minn. 445, and cases cited; *McGear v. Woodruff*, 33 N. J. Law, 213; *Jones v. Robbins*, 8 Gray, 329; 24 Am. & Eng. Ency. of Law, 500, 504; Cooley, Const. Lim. (6th ed.), 389, note 2 and cases cited; 1 Dillon, Mun. Corp. (4th ed.), §§ 432–439; Bishop, Statutory Crimes, § 23; 1 Bishop, Criminal Procedure, § 892; Pomeroy, Const. Law, § 246; *Mayor of Mobile v. Allaire*, 14 Ala. 400; *Mayor of Mobile v. Rouse*, 8 Ala. 515; *McInerney v. Denver*, 17 Colo. 302; *Williams v. Augusta*, 4 Ga. 509; *Floyd v. Eatonton*, 14 Ga. 354; *Hill v. Dalton*, 72 Ga. 319; *Davenport v. Bird*, 34 Iowa, 524; *Waldo v. Wallace*, 12 Ind. 569, 584; *Amboy v. Sleeper*, 31 Ill. 499; *Robbins v. People*, 95 Ill. 175; *Mayor of Monroe v. Meuer*, 38 La. Ann. 1192; *Emporia v. Volmer*, 12 Kan. 622; *State ex rel. Curtis v. Topeka*, 36 Kan. 76; *Williamson v. Comm.* 4 B. Mon. 146; *Kansas City v. Clark*, 68 Mo. 588; *St. Louis v. Cofferata*, 24 Mo. 96; *Johnson v. State*, 59 Miss. 543; *State v. Glenn*, 54 Md. 572; *Shafer v. Mumma*, 17 Md. 331; *Howe v. Plainfield*, 37 N. J. Law, 145; *Riley v. Trenton*, 51 N. J. Law, 498; *Liberman v. State*, 26 Neb. 464; *Brownville v.*

*Cook,* 4 Neb. 101; *Polinsky v. People,* 11 Hun, 390; *Rogers v. Jones,* 1 Wend. 238; *Wong v. Astoria,* 13 Oreg. 538; *Inwood v. State,* 42 Ohio St. 186; *Byers v. Comm.* 42 Pa. St. . 89; *Greenville v. Kemmis,* 4 Mun. Corp. Cas. 523; *Anderson v. O'Donnell,* 29 S. C. 355; *Ex parte Schmidt,* 24 S. C. 363; *Trigally v. Memphis,* 6 Coldw. 382; *Thomas v. Comm.* 22 Grat. 912; *State v. Conlin,* 27 Vt. 318.

BARDEEN, J. Two propositions are presented for our consideration: (1) The city of *Madison* has no power to enact the ordinance under which the plaintiff in error was convicted; (2) the provisions of law providing for the summary trial of the accused without a jury are in violation of the constitution of the state and of the United States.

1. The first proposition must be determined upon a consideration of the powers granted the common council of the city of *Madison* under its charter (ch. 36, Laws of 1882), with the amendments thereto. Sec. 1, subch. I, says:

"The city of *Madison* shall have the general powers possessed by municipal corporations at common law and, in addition thereto, shall have the powers hereinafter specifically granted."

Sec. 3, subch. IV, provides that the common council shall "have full power to make, enact, ordain, establish, publish, enforce, alter, modify, amend and repeal all such ordinances, rules and by-laws for the government and good order of the city, for the suppression of vice and immorality, for the prevention of crime, and for the benefit of the trade, commerce and health, as it shall deem expedient; *declaring and imposing penalties,* and to enforce the same against any person or persons who may violate any of the provisions of such ordinance, rule or by-law, and such ordinances, rules and by-laws are declared to be and have the force of law: provided they are not repugnant to the constitution of the United States 'and of the state. . . ."

Subd. 1 grants the power to provide for the abatement and removal of nuisances under the ordinances or at common law. Subd. 3 is as follows:

"To prevent any riots, noise, disturbances or disorderly assemblances, *suppress and restrain* disorderly houses or groceries and houses of ill-fame, and to authorize the destruction of all instruments used for the purpose of gaming."

Sec. 5 of said subch. IV declares all "gambling houses, houses of ill-fame, disorderly taverns," to be public or common nuisances. Sec. 4 of ch. 7 of the city ordinances provides that, if any person shall voluntarily be guilty of keeping or maintaining any disorderly house or house of ill-fame, he shall, on conviction, be fined a sum not exceeding $100, and the further sum of $100 for each twenty-four hours such house shall be continued after the first conviction, or after such person shall have been ordered "to suppress, restrain or discontinue the same."

The argument is that the charter provisions noted give the common council no power to enact an ordinance *punishing* a person for keeping a disorderly house or house of ill-fame; that its power is limited to suppression and restriction. There can be no doubt of the rule that a municipal corporation possesses and can exercise only such powers as are granted in express words; such as are necessarily or fairly implied in or incident to the powers expressly granted; and those essential to the declared objects and purposes of the corporation. 1 Dillon, Mun. Corp. § 89. If there is great doubt concerning the existence of the power, the corporation cannot exercise it. The books are full of cases in which this subject has been considered. The field has been explored from all directions. Some of the cases are narrow and technical in their construction of the powers granted, while others adopt a somewhat broader view. We get but scanty assistance from adjudged cases, because of the want of uniformity in the language used in granting the powers and the great variety of circumstances deemed proper to be considered in arriving at the legislative intent. Two cases presented for our consideration are deemed decisive of this

Ogden vs. The City of Madison.

case in favor of the plaintiff in error. In *In re Lee Tong*, 18 Fed. Rep. 253, the power granted was "to suppress bawdy-houses, gaming and gambling houses." The ordinance forbade and declared it to be unlawful for any person to play any one of a long list of games of chance "for or with any thing of value," and provided that any person violating the ordinance should be punished by imprisonment or by fine or both. Lee Tong was arrested for gaming and convicted, and sought his release on *habeas corpus*. Judge DEADY held that the power "to suppress gaming" did not carry with it power to define and punish the crime of gaming. He laid some stress on the fact that the legislature had passed a law punishing gaming, and that in frequent amendments to the charter by the legislature power to *punish* for offenses had only been given in cases where the state law had not prescribed a penalty. This, he believed, showed a legislative intent, and, with the other circumstances, was sufficient to support the conclusion reached. He cites the other case (*Mt. Pleasant v. Breeze*, 11 Iowa, 399) relied on by counsel here as supporting his decision. This case holds that where the power granted was "to suppress" gambling it gave no power to enact an ordinance making gambling a misdemeanor and prescribing a punishment therefor. The city had no power to *punish* that which it was only authorized to *suppress*. In a subsequent case (*Chariton v. Barber*, 54 Iowa, 360) the court, in referring to this case, say:

"The decision is not without grave objections as to the reasons upon which it is based. But it has been accepted without question or challenge for more than nineteen years. We ought not, at this late day, disturb it."

They accordingly held that the power to suppress and restrain disorderly houses did not authorize the passage of an ordinance declaring the keeping of such a house a misdemeanor and imposing a punishment by fine and imprisonment for the offense. In the case of *Centerville v. Miller*, 57

Iowa, 56, the court say they are not disposed to extend the rule announced in the *Mt. Pleasant Case*, and remark that they "know of no more effective way of preventing the commission of an offense than a provision providing for its punishment." See *Centerville v. Miller*, 57 Iowa, 225.

We appreciate quite fully the difficulty the court found in following the early decision. It is based upon narrow and technical grounds. It leaves but a mere shadow where substance was necessary. It takes the spirit and the life from the law, and leaves but a feeble and flickering remnant. It must be assumed that the legislature intended that the words of the charter should have their usual and ordinary signification. The following definitions of the words "suppress" and "restrain" are instructive in this connection: Bouvier: "Suppress: To put a stop to when actually existing." Anderson: "To prevent; never, therefore, to license or sanction." Standard: "To put down or put an end to by force; overpower; crush; subdue." Century: "To overpower; subdue; put down; quell; crush; stamp out." Webster: "To overpower and crush; to overwhelm; to subdue; to put down; to repress; to destroy." As to the word "restrain," the lexicographers all agree that it means "to curb; to check; to repress; to debar; to prevent; to hinder." If these words are to be understood to have the meaning here ascribed to them, then it would seem clear that, when the power to suppress and restrain an act is given, the power to adopt such measures as are essential and incident to such express grant of power must follow. Without it the grant would be barren and futile. If the grant of power to suppress and restrain means that the corporation may overpower, crush, subdue, and prevent the evil aimed at, then certainly it may affix reasonable penalties for the commission of such act. As suggested by the Iowa court, we know of no better or more effective way of suppressing a disorderly house, or preventing or crushing them

out, than to provide a penalty against the keeper. The power to restrain houses of ill-fame would be barren indeed, if no means of punishment could be prescribed and enforced. The charter expressly authorizes the council to declare and impose penalties for the breach of its ordinances. The penalty imposed by the ordinance is by fine. Imprisonment only follows in case the fine is not paid.

The case of *Schwuchow v. Chicago*, 68 Ill. 444, is somewhat instructive on the question above discussed., It holds that, where the power was granted to suppress groceries where liquor was sold, the city might absolutely prohibit sales, or license, as it pleased. The case of *Wong v. Astoria*, 13 Oreg. 538, is somewhat in point. Jennie Wong was prosecuted under a city ordinance as the keeper of a bawdy-house. The power given in the charter was to "suppress and prohibit." The validity of the ordinance was challenged. In disposing of this question the court says:

"The power to suppress and prohibit practices that are demoralizing and pernicious would be of little, avail if it could, not be vindicated. The offense directly affects the welfare of the city, and how could the latter suppress and prohibit it unless it had the right to adopt a by-law against it, and affix a penalty thereto?"

In *St. Louis v. Schoenbusch*, 95 Mo. 618, the power granted was "to pass all such ordinances, not inconsistent with the provisions of this charter or the laws of the state, as may be expedient in maintaining the peace, good government, health, and welfare of the city, its trade, commerce, and manufactures, and to enforce the same by fines and penalties." It was held that the city might legally adopt an ordinance prohibiting cruelty to animals, and enforce it by proper penalties. But we need not multiply cases. They only illustrate the diversity of opinion among courts in somewhat similar situations.

In this connection the plaintiff in error makes the further

Ogden vs. The City of Madison.

argument that the ordinance is void because it conflicts with sec. 3294, Stats. 1898, which reads as follows:

" In all cases, not otherwise specially provided for by law, where a forfeiture shall be incurred by any person and the act or omission for which the same is imposed shall not also be a misdemeanor, such forfeiture may be sued for and recovered in a civil action. When such act or omission is punishable by fine and imprisonment or by fine or imprisonment or is specially declared by law to be a misdemeanor it shall be deemed a misdemeanor within the meaning of this chapter. The word forfeiture, as used in this chapter, shall include any penalty, in money or goods, other than a fine."

The claim is that the offense charged in the complaint in this action is a misdemeanor under the laws of this state, and therefore any procedure for its punishment, other than that which is applicable to misdemeanor, cannot stand. This argument is based upon an erroneous assumption. The offense charged in the complaint is not the same offense made penal by sec. 4589. It is a separate and distinct offense, as will be discussed and shown in a later portion of this opinion. Moreover, the word " fine," as used in sec. 3294, does not include penalties imposed for the violation of municipal ordinances. *Oshkosh v. Schwartz,* 55 Wis. 483. The ordinance does not provide for " fine and imprisonment " or for " fine or imprisonment." It simply says that the person found guilty of violating it shall, " on conviction, be fined." Imprisonment follows only upon neglect to pay the penalty. See *State v. Grove,* 77 Wis. 448. Without further elaboration, we hold that the provisions of the charter are broad enough to, and do, include the power to prescribe and enforce a penalty against the keepers of disorderly houses or houses of ill-fame.

2. The record shows that the plaintiff in error was arrested upon a warrant issued by the municipal court. He was taken before the judge, and was tried and convicted without a jury. He then took an appeal to the circuit

court, where he was tried by a jury and again convicted. It is now insisted that the offense charged was a misdemeanor under the laws of this state, and he could not be properly convicted in any other way than by the verdict of a jury in the municipal court. But is the prosecution here for a misdemeanor under the state law? It is true that the state law makes the keeping of a disorderly house known as a "house of ill-fame" a penal offense, and that the keeper thereof was indictable at common law. We may assume for the purpose of this decision that the person accused of such an offense was entitled to a jury trial when prosecuted under the state law. In *State ex rel. Milwaukee v. Newman,* 96 Wis. 258, this court said:

"It seems to be the clear weight of authority that an act may be a penal offense under the laws of the state, and that further penalties, under proper legislative authority, may be imposed for its commission by municipal by-laws or ordinances, and the enforcement of the one would not preclude the enforcement of the other."

That this proposition has most ample support may be seen by reference to the cases collected in Cooley, Const. Lim. 239, and 1 Beach, Pub. Corp. § 510. A few cases illustrative of the point we desire to make will now be noticed:

In *Mayor of Mobile v. Allaire,* 14 Ala. 400, a city ordinance imposed a fine for assault and battery, which was also punishable under the state law. The defendant was arrested and convicted under the city ordinance, and took an appeal. Pending his appeal he was prosecuted and fined under the state law, which fine he paid. On the trial of the case on the appeal the court charged the jury that the conviction under the state law was a complete bar to the plaintiff's recovery on the appeal. The supreme court disposed of the case in the following language:

"The object of the power conferred by the charter, and the purpose of the ordinance itself, was not to punish for an offense against the criminal justice of the country, but to

provide a mere *police regulation* for the enforcement of good order and quiet within the limits of the corporation. So far as an offense has been committed against the public peace and morals, the corporate authorities have no power to inflict punishment, and we are not informed that they have attempted to arrogate it. It is altogether immaterial whether the state tribunal has interfered and exercised its powers in bringing the defendant before it to answer for the assault and battery, for whether he has been there punished or acquitted is alike unimportant. · The offenses against the corporation and the state, we have seen, are distinguishable and wholly disconnected, and the prosecution at the suit of each proceeds upon a different hypothesis. The one contemplates the observance of the peace and good order of the city. The other has a more enlarged view,— the maintenance of the peace and dignity of the state."

A case more nearly in point is *State v. Lee*, 29 Minn. 445. The defendant was arrested under a state law for keeping a house of ill-fame. She set up as a defense a prosecution and conviction under a city ordinance of the city of St. Paul for the same offense. The opinion is long and instructive. It holds that an offense against a municipal by-law proceeding from the same act which also constitutes a felony under the state law is not for that reason to be considered the same offense. The two are distinct in their legal character, both as to the nature and quality of the offenses and the jurisdictions offended against. Quoting from the opinion:

" One who is within the limits of the municipal jurisdiction must not only obey the laws of the state, but must adjust his conduct to the requirements of local by-laws. An act which, outside a city, would subject him to punishment by the state only, committed inside its limits, by reason of the place and the consequent aggravation attending it, will render him liable also for the additional penalty. The same act prohibited by both the city and the state may thus constitute two offenses, which are intrinsically and legally distinguishable."

The case of *Wong v. Astoria*, 13 Oreg. 538, is this case on all-fours, as to the points involved for decision. The prose-

·cution was for keeping a bawdy-house. .The validity of the city ordinance was contested, and the further point was made that the police court did not allow a jury trial. The court said:

"The appellant's counsel claims that a trial by jury is secured to a party by the constitution of the state. This is undoubtedly so as to all criminal prosecutions, but the enforcement of a penalty for violating a city ordinance is not a criminal prosecution, within the meaning of the provision of the constitution upon that subject. The right of trial by jury provided for in the constitution of the United States and of various states is understood to mean the common-law trial by jury. ' If the appellant had been allowed a jury trial under the charter of the city, it would not have been a compliance with the constitutional provisions. It must have been by a jury of twelve good and lawful men, to have fulfilled its terms. Nor is it the deprivation of the right of a jury trial proper, because the party is not able to obtain it in the inferior court. If it can be secured upon appeal by a reasonably simple procedure, the conditions of the guaranty will be answered. . . . The procedure was to administer the regulations of the city, and the constitution of the state authorizes the creation of municipal courts for that purpose. It was in no sense a trial for a crime against the state."

In *Mankato v. Arnold*, 36 Minn. 62, it is said:

"Offenses against ordinances enacted by a municipal corporation, in the exercise of its legitimate police authority, . . . are not generally construed to be criminal cases, in the proper sense of the term 'criminal,' and the prosecutions therefore are not criminal prosecutions, within the meaning of the constitution, which refers to prosecutions for offenses essentially criminal under the general laws of the state. . . . Prosecutions for offenses against municipal by-laws, which in cities, from the number and nature of such cases, must necessarily be summary to be effective, are on the same footing with prosecutions for petty offenses, which in some jurisdictions are summarily tried, and a jury held not to be required, even though the penalty be a limited imprisonment."

Again, in *State v. Robitshek*, 60 Minn. 123, the court said:

"It has repeatedly been decided by this court, as it has elsewhere, that municipal ordinances are not criminal statutes; that violations thereof are not crimes, nor are such violations governed by the rules of the criminal law, save in certain specified exceptional particulars."

A most interesting discussion of the question here involved may be found in the case of *McInerney v. Denver*, 17 Colo. 302. It is said:·

"An ordinance must be authorized and must not be repugnant to a statute in force over the same territorial area; but, if there is no other conflict between the provisions of the statute and the ordinance save that they deal with the same subject, both may be given effect. The resulting or correlative doctrine is now too firmly established to admit of serious question that the same act may constitute two offenses, viz. a crime against the public law of the state, and a petty offense against a petty local municipal regulation. The weight of authority likewise fairly sustains the view that a prosecution and punishment for one of these offenses is no bar to a proceeding for the other. . . . But we are told that admitting that the same act may be an offense against each of two sovereignties or laws, and that the actor may be punished for each of the offenses, it does not follow that the *procedure* may be different. And it is confidently asserted that summary proceedings without a jury in cases like the present cannot be constitutionally sustained."

The court then asserts the rule in that state to be that in prosecutions for the violations of ordinances, where the offensive act is not a misdemeanor by general statute, the constitutional provisions relating to indictments and trials by jury do not apply, and the fact that imprisonment in the first instance may be part of the penalty does not affect the question. It then proceeds to discuss the question of whether a summary proceeding to punish a violation of a municipal by-law, which is also a misdemeanor under a public statute, punishable by indictment and jury trial, is proper. The discussion bears with some considerable directness upon the

Ogden vs. The City of Madison.

question here for decision. It is said the inquiry is not, Was the *act* complained of a public misdemeanor by statute or at the common law? but, Does the *offense* charged belong to a class of offenses that were usually proceeded against summarily? The fact that the legislature saw fit to give the power to cities to enact the ordinance gives rise to the inference that they believed the offense to be, as against the city, one of those petty offenses regarded as local injuries. The public welfare, requiring the maintenance of peace and good order and the preservation of public morals in cities, renders summary proceedings in such cases a necessity. The court then says:

"A careful examination of authorities has led us to the conclusion that both in this country and England the transgression of municipal regulations enacted under the police power for the purpose of preserving the health, peace, and good order and otherwise promoting the general welfare within cities and towns had for more than a century prior to the adoption of our constitution been generally prosecuted without a jury; "— citing a large number of authorities.

A case in Maryland has some bearing upon the question under discussion. Under the charter and ordinances the mayor of Hagerstown was given authority to try and fine disorderly persons and lewd women found within the corporate limits. It was insisted that the exercise of this power was the exertion of judicial power, which by the constitution was confided to certain specified classes of persons, and that the mayor was not included in the enumeration. The court said:

"This argument would be entitled to great weight if we thought the power exercised by the defendant was, in the sense of the constitution, a part of the judicial power. But we entertain no such opinion. We regard it as but a part of the *police* power, as contradistinguished from the regular judiciary powers of the state. From time immemorial a distinction has been observed between the two, both in England and this country. It would be next to, if not quite,

Ogden vs. The City of Madison.

impossible for a large city like Baltimore to preserve order within its limits, preserve the streets free from interruption,— indeed, to do most of the thousand things necessary to be done to carry on its various and indispensable operations,— if in every case it were a necessary preliminary that the offender should be regularly prosecuted by presentment, indictment, and trial. . . . We regard the power conferred on the corporation of Hagerstown to summarily punish persons of the description of the defendant, Elmira, is admitted to have been, as falling directly within the definition of a police regulation. She was punished for an offense against the decency and morals of Hagerstown, and not against those of the state. She offended within the corporate limits, and for such offense she was made to answer. This did not wipe out all responsibility for the offense to the dignity and sovereignty of the state." *Shafer v. Mumma,* 17 Md. 331.

One of the points under discussion may be further illustrated by reference to the decisions of the United States supreme court with reference to counterfeiting. In *Fox v. Ohio,* 5 How. 410, the court held that passing a counterfeit coin, which was punishable under federal law, might also be punished by the state as a crime, and that, although the party might be convicted for violating both statutes, still he would not be twice put in jeopardy for the same offense. This doctrine was held sound in *Moore v. Illinois,* 14 How. 13, and the status of double allegiance was discussed, and liability to both sovereignties upheld. See note to this case, 5 Notes, U. S. Rep. 213.

It is not to be understood, however, that the authorities are uniform in their holdings on these questions. Some of the cases hold that, when the ordinances and state law prescribe a penalty for the same act, a conviction under one is a complete bar to a conviction under the other. *State v. Cowan,* 29 Mo. 330; *State v. Thornton,* 37 Mo. 360; *State v. Welch,* 36 Conn. 215. They deny the principle made prominent in the cases cited, that the same act may constitute two distinct and several offenses, and each be subject to pun-

Ogden vs. The City of Madison.

ishment by the proper tribunals of the state and the munici-
pality.   Of course, if the act complained of constitutes but
one offense, then it must be punished in the way prescribed
by the constitution, and if, under the state law, it is only
triable by a jury, it cannot be dealt with summarily when
prosecuted under the ordinance.   If the rule already quoted
from *State ex rel. Milwaukee v. Newman*, 96 Wis. 258, is to
be sustained, it must be upon the theory that what may be
a felony or misdemeanor under the statute, when dealt with
by a city by ordinance or by-law loses its criminal aspect
because of its local character and the greater necessity for
more stringent police regulation in cities.   It cannot be
sustained upon any other logical theory.   If it is the same
offense when prosecuted under the ordinance that it is under
the state law, then the constitutional guaranty of a jury
trial must be recognized.   If, when prosecuted under the
ordinance, it is a petty offense, local in character and insig-
nificant as to results, then it comes within that class of cases
that have long been dealt with summarily, and a jury trial
is not necessary.   The point is made here with great earn-
estness that the offense with which the plaintiff in error
stands charged is a misdemeanor, indictable at common law
and only triable by jury.   We have already referred to this
contention.   We have endeavored to show that the offense
under the ordinance is not the same as the offense under the
statute.   It is admitted by counsel for plaintiff in error that
the same act may be an offense against each of two differ-
ent sovereignties, and that each may punish, but it is claimed
the *procedure* may not be different.   Whether or not the
procedure may be different must depend upon the conclu-
sion reached as to the *essence* of the offense.   In *State ex rel.
Hamilton v. Municipal Court*, 89 Wis. 358, this court made
use of the following language:

"The sale of intoxicating liquors without a license is an
offense against a municipal regulation.   But it is more.   It

Ogden vs. The City of Madison.

is an offense against the general law of the state as well. It is a misdemeanor (sec. 1550, R. S.), and indictable (*Allen v. State*, 5 Wis. 329). The prosecution of such an offense, even under a municipal ordinance, is a (*quasi*) criminal prosecution (*Boscobel v. Bugbee*, 41 Wis. 59; *Platteville v. McKernan*, 54 Wis. 487; *State v. Grove*, 77 Wis. 448), and is not a summary proceeding; while actions for such violation of municipal ordinances as are not also misdemeanors are civil actions (*Platteville v. Bell*, 43 Wis. 488; *Oshkosh v. Schwartz*, 55 Wis. 483), and are within the summary jurisdiction."

The decision seems to assume that the act of selling intoxicating liquor without a license, contrary to a city ordinance, rose to the grade of a misdemeanor for no other reason than that it was also forbidden by the state law. Why this conclusion should follow is not pointed out. It is, as we have seen, contrary to the great weight of authority, and, followed to its logical result, would so blend the two offenses that a prosecution for one would be a bar to a prosecution for the other. When it is admitted that the same act constitutes an offense both against the city and against the state, and that both may punish, then it follows that each may punish in accordance with the rules of procedure prescribed therefor, unless some constitutional inhibition prevents. When the peace and dignity of the state are being vindicated the constitution says the accused may have a jury trial. When some local municipal by-law has been invaded the constitutional guaranty does not apply. In the language of the supreme court of Colorado in *McInerney v. Denver*, 17 Colo. 302, we say:

"Whatever may be the view concerning the gravity of the offense against a state law, the fact that the legislature authorizes the city to deal with the same subject by ordinance indicates that to the legislative mind the act also properly constitutes one of those petty offenses regarded as local injuries. The public welfare, requiring the maintenance of peace and good order, as well as careful sanitary regulations in cities and towns, renders summary proceedings in many

Ogden vs. The City of Madison.

cases a necessity. And we are not now prepared to inaugurate the revolution that must follow the announcement of the doctrine that a jury trial is an indispensable requisite."

The statute (sec. 2517, S. & B. Ann. Stats.) empowers the municipal judge of Dane county to deal with this class of offenders in the manner he did with the plaintiff in error. There is a most respectable line of decisions holding that, even if the law providing for summary proceedings without a jury is invalid, yet if the defendant is entitled on an appeal to a trial by jury, and there be no unreasonable limitation connected with the appeal, the constitutional provisions are satisfied. *Steuart v. Baltimore,* 7 Md. 501; *Jones v. Robbins,* 8 Gray, 329; *Emporia v. Volmer,* 12 Kan. 622; *Beers v. Beers,* 4 Conn. 535; *State v. Beneke,* 9 Iowa, 203; *Haines v. Levin,* 51 Pa. St. 412; *Norriston T. P. Co. v. Burket,* 26 Ind. 53; 1 Dillon, Mun. Corp. (4th ed.), § 439. This court made a similar holding in a civil case at an early day. *Gaston v. Babcock,* 6 Wis. 503. The doctrine of the state courts was somewhat modified by the United States supreme court in *Callan v. Wilson,* 127 U. S. 540,— a case involving an offense against a federal statute. See *Natal v. Louisiana,* 139 U. S. 621; *Capital T. Co. v. Hof,* 174 U. S. 1.

We hold that this prosecution is for an offense against a mere police regulation for the good order of the city, for the collection of a penalty prescribed by the ordinance, and that the plaintiff in error was not entitled to a jury trial as a matter of right.

*By the Court.*— The judgment is affirmed.