Stewart, Respondent, vs. Olson, Appellant. ·

*December 10, 1925—January 2, 1926.*

*Automobiles: Collision with pedestrian at street intersection: Contributory negligence: Pedestrian running across street: Burden of proof: Trial: Continuance: On amendment of pleading: Discretion of court.*

1. Although the court, in an action to recover for personal injuries sustained in a collision with defendant's automobile, permitted an amendment to the complaint to allege violation of a city ordinance by the defendant, he did not abuse his discretion in denying a motion for a continuance on an affidavit of surprise by defendant's counsel where plaintiff was required to subject himself to further examination under sec. 4096, Stats., and to furnish defendant with the names of witnesses who saw the accident.  p. 491.

2. The admission of traffic ordinances as to the manner of turning to the right which were inconsistent with secs. 1636—47 to 1636—57, Stats. 1921, is reversible error, the ordinances having a decided bearing on the negligence of both parties. pp. 492, 494.

3. The weight of confused, inconsistent, or contradictory testimony is for the jury.  p. 496.

4. Although the burden of proving plaintiff's contributory negligence rested on defendant, where it appeared from plaintiff's undisputed testimony that he was wanting in due care the question became one of law for the court.  p. 498.

5. Where plaintiff saw the automobile coming along the same street on which he was running, and was struck when it turned into the street he was crossing, although he could have stopped before he reached a place of danger, he was contributorily negligent as a matter of law.  p. 498.

* Owen and Crownhart, JJ., dissent.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge.  *Reversed.*

For the appellant there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the respondent there was a brief by *Herman Sachtjen,* attorney, and *Hill, Thomann & Beckwith,* of counsel,

.all of Madison, and oral argument by *Mr. D. V. W. Beck-with* and *Mr. Sachtjen.*

JONES, J. The plaintiff in this action for damages was injured when he collided with an automobile driven by the defendant on the evening of May 25, 1921. The plaintiff had been attending a theater, and upon coming out about 9 o'clock found it was raining and crossed the street and proceeded on a run down the street to the right. The defendant was driving in a southwesterly direction upon East Wilson street in the city of Madison at the time in question and was approaching the place where South Butler street intersects East Wilson street at right angles. The plaintiff was running east on King street, which joins East Wilson at the point where East Wilson and South Butler streets intersect. The plaintiff testified that he saw the defendant's car as it approached the junction of the streets at about twenty-five miles an hour; that he slowed up, thinking that the defendant might turn at right angles into Butler street; that the course of the car led him to believe that the defendant was turning and about to continue up King street, so that he proceeded across Butler street; that the defendant's car was suddenly swung about into Butler street on the left side of the street, and that he was too far advanced to stop and retreat and so attempted to get across in front of the automobile, but was struck by the right end of the front bumper upon his right leg and knocked down. The defendant testified, and was corroborated by the other occupants of the automobile, that he drove up East Wilson street and made the turn into Butler street at a rate of about twelve miles an hour; that he had seen the plaintiff on King street just before making the turn; that he turned into Butler street on the right side of that street and suddenly perceived the plaintiff in front of the automobile; that he put on the brakes; but that before the automobile could

be brought to a standstill it had struck the plaintiff and knocked him down; that they picked the plaintiff up about three or four feet from the east curb of Butler street and took him to the hospital.

Two witnesses who were walking along the south side of King street in an easterly direction testified that they saw the plaintiff and the automobile of the defendant but did not see the accident; that upon hearing the collision they looked towards the sound and saw the car of the defendant proceeding along the left side of Butler street; that they rushed over and picked up the plaintiff, who was lying near the east curb, and helped to carry him across the street to the automobile of the defendant which had stopped on the left side of the street.

At the trial the plaintiff's counsel amended the complaint by inserting certain ordinances with respect to the manner of turning to the right, which ordinances were, though unknown to the court at the time, in conflict with a statute recently enacted. The jury found that the defendant passed to the left of the center of the intersection in making the turn into Butler street and that he was negligent in so doing; that the defendant was driving at a speed in excess of fifteen miles an hour, and that in so doing he was negligent and that this negligence was a proximate cause of the accident; that the plaintiff was not guilty of contributory negligence.

Judgment was entered for the plaintiff in the sum of $3,500 and costs, and from this judgment the defendant appeals on the grounds that the plaintiff was guilty of contributory negligence as a matter of law; that the amendment of the complaint with reference to the ordinances was prejudicial error; that the answer to the first question of the verdict was entirely unsupported by the evidence and so influenced the verdict as to require a new trial; and that there was other error.

At the opening of the trial the plaintiff's counsel asked leave to amend the complaint by adding a clause to the effect that the defendant drove his car, while turning from Wilson street into Butler street, in violation of the laws of the state and of an ordinance of the city of Madison reading as follows: "Vehicles turning to the right into another street shall turn as near the corner as practical, thus,—" (then a diagram follows). On objection the proposed amendment was made more specific by the allegation that the violation consisted in "driving his automobile to the left of the center of the crosswalk of South Butler street where it intersects King street in said city; that is, that he drove to the left of the center of the street as he went into the street, South Butler street." It was objected by counsel for the defendant that the amendment changed the entire theory of the case and that the defendant had taken depositions of witnesses in other states and that the defendant's counsel were surprised. An affidavit of surprise was filed and a continuance of the trial was asked. The trial judge allowed the amendment, stating that he had examined the adverse examination of the plaintiff and the depositions relating to the location of the car and the manner in which it turned into Butler street and that in his opinion there was no ground for a continuance. The order provided that the plaintiff should subject himself to further examination under sec. 4096 of the Statutes out of the hearing of the jury and should furnish the defendant with the names of the witnesses who saw the accident. At the close of the testimony and before argument the plaintiff was allowed again to amend the complaint by adding the following:

"Plaintiff further alleges that said defendant, as he drove from Wilson street into Butler street, and proceeded up Butler street, at and just prior to the time he struck the plaintiff, drove to the west of the center line of Butler street, in violation of the ordinance of the city of Madison providing as follows: 'Vehicles in motion shall keep either

to the right of the center of the street or as near the right-. hand curb as possible. . . .' "

The defendant's counsel objected on the grounds that no such claim had been made in the complaint or the former amendment and that there had been no opportunity to prepare questions or instructions nor make proper investigation, and that the ordinance was not in force or effect. The amendment was allowed on the ground that the whole subject had been fully litigated and that the rights of the parties would not be prejudiced.

It is now argued by counsel for the defendant that there was prejudicial error in allowing these amendments on the ground of surprise, especially as it is claimed that the plaintiff made radical changes in his testimony given under sec. 4096 and that given at the trial. If the court had allowed the continuance and the subject were before us whether such allowance was proper, we should approve the order, or if the trial court had directed a new trial solely on these grounds we should not be disposed to overrule the order. *Schlag v. C., M. & St. P. R. Co.* 152 Wis. 165, 139 N. W. 756. When the trial judge granted the amendments and denied a continuance he gave his reasons for holding that there was no prejudicial surprise. The court had the right to exercise a discretion in this matter and we do not think it was abused.

But counsel for the appellant argue that the introduction of these ordinances and the instructions relating to them were erroneous and prejudicial on other grounds than that of surprise. The circumstances under which one of the amendments was allowed are very well stated in a portion of the decision of the trial judge as follows:

"When the amendment to the complaint was allowed setting up violation of city ordinances as added grounds of negligence, the court relied upon *Oshkosh v. Campbell,* 151 Wis. 567, 569, 139 N. W. 316, where it was held that a similar ordinance was not in conflict with the state statute.

Neither counsel nor the court then knew that that statute had been so amended since that time as to take this case out of the rule of the *Oshkosh Case*. The court is satisfied that an ordinance requiring the driver of an automobile, in making a turn to the right at street intersections, to keep as near the right-hand curb as practical is not in strict conformity with the provision of sec. 1636—49*b* of the Statutes, which requires nothing more than that the driver of an automobile shall keep to the right of the center of the intersection."

Part of sec. 1636—49*b* is as follows:

"Any such person so operating a motor vehicle shall, at the intersection of public highways, keep to the right of the center of such intersection of such highway when turning to the right and pass to the right of the center of such intersection when turning to the left."

This language came into the statute in 1913 after the decision in *Oshkosh v. Campbell*, 151 Wis. 567, 139 N. W. 316, which was governed by ch. 516 of the Laws of 1907 and ch. 305 of the Laws of 1905. Without tracing the history of the statutes, it suffices to say that when the accident happened one of the sections of the statute regulating the use of automobiles declared that the provisions of secs. 1636—47 to 1636—57 "shall be uniform throughout the state." After expressly naming certain requirements which municipalities could not make by ordinance and naming a class of parks and highways to which the statute did not apply, the section provided that the provisions of the statute should "not prohibit any city, village, county, town board or local authority from passing any ordinance, resolution, rule or regulation in strict conformity with the provisions of section 1636—47 to 1636—57 inclusive." Sec. 1636—55 of the Statutes of 1919–1921. It seems too plain to call for discussion that the ordinances received in evidence were not in strict conformity with the statute but that they were wholly inconsistent with it, and therefore had no

proper place in the evidence. *Ogden v. Madison,* 111 Wis. 413, 87 N. W. 568; *Baraboo v. Dwyer,* 166 Wis. 372, 165 N. W. 297. Counsel for the plaintiff argue that there is no real conflict between the ordinances and the statute and cite the following authorities: *Hiscock v. Phinney,* 81 Wash. 117, 142 Pac. 461; *Beck v. Cox,* 77 W. Va. 442, 87 S. E. 492; *Segerstrom v. Lawrence,* 64 Wash. 245, 116 Pac. 876; Babbitt, Motor Vehicles (3d ed.) § 282; *Roper v. Greenspon,* 272 Mo. 288, 198 S. W. 1107. But in our opinion those authorities do not sustain the contention. The trial court, as already appears from the quoted part of the decision, assumed that the conflict between the ordinance and the statute existed, but expressed the view that it was no ground for a new trial, that the issue raised by the ordinance was submitted to the jury. The reason assigned was that the answers to other questions were supported by the evidence and were sufficient to establish the negligence of the defendant; that it did not appear that the submission of this issue could have affected the answers to other questions. With this we cannot agree. The court gave the following instruction:

"*Mr. Stewart,* as a pedestrian lawfully upon the street, had the right to act upon the assumption that *Dr. Olson* in driving his automobile in and upon the street would act in compliance with the law and would obey the ordinary and usual rules of the road."

The ordinances, if valid, were just as much the law as the statutes. Counsel for the plaintiff still insist that the ordinances were in effect, and doubtless they greatly relied on them. It would be a telling argument to the jury that the defendant had manifestly violated the law as declared by the ordinances, and, if the jury so believed, they would more readily believe that he had also violated the speed law. The statute required nothing more than that the driver of an automobile shall keep to the right of the center of the

intersection.   As the trial court said in its decision: "A requirement that one shall keep as near the curb as practical limits the driver to an area in the street, under ordinary circumstances, much more circumscribed than that fixed by the statute."   If the jury believed that the defendant had violated the ordinances, it was natural for them to conclude that he had driven his car on the westerly side of the street as claimed by the plaintiff's counsel.   This was a question hotly contested, with the greater number of witnesses testifying that the car, as the turn was made, was near the easterly curb.   The introduction of the ordinances had a decided bearing not only on the negligence of the defendant but the contributory negligence of the plaintiff.

On the question of the point of intersection the court correctly instructed the jury as follows:

"By the center of the intersection of Wilson and Butler streets is meant the point where the center line of Butler street—that is, a line drawn parallel to the curbs of Butler street and half way between those curbs and extended across Wilson street—meets a similar line drawn along the center of Wilson street parallel to the curbs of Wilson street and half way between such curbs.   It does not mean a point on a line drawn across from the end of the sidewalk or any part of the sidewalk at the northeast corner of Wilson and Butler streets to the opposite corner or sidewalk of Butler, Wilson, and King streets."

As already stated, in answer to the first question the jury found that the defendant, as he turned, failed to drive to the right of the center of the intersection of Wilson and Butler streets, and in other answers that such failure was negligence, the probable cause of the injury, and that an injury to the pedestrian should have been foreseen.   It was and still is the claim of the counsel for the plaintiff that the center of intersection is the center of the crosswalk of Butler street at the junction of Butler street and King street.   The intersection as defined by the court is many feet in a south-

erly direction from that claimed by plaintiff's counsel. There was no testimony whatever on which to base this answer to the first question. Therefore the answer was contrary not only to the undisputed testimony but to the charge of the trial judge. The trial court was of the opinion that, assuming that this answer was unsupported by the evidence and that the answer should be changed, it does not show perverseness, and that the answers to other questions settled controverted questions of fact upon which the evidence would have warranted a finding either way. But the question is again presented whether this finding by the jury did not necessarily influence their answers to the other questions. If the defendant had passed to the left of the intersection as defined by the court he could only have reached the line of travel which his witnesses said he pursued near the easterly curb on Butler street, by a very sharp and difficult curve. It was natural to argue and for the jury to believe that, if he drove to the left of the intersection, as a physical fact he must have driven on the west side of Butler street as claimed by the plaintiff. It is our conclusion that the wholly unwarranted answer to the first question seriously affected the answers to the other questions relating to the negligence of both parties. It is proper to state that the erroneous admission of the ordinance requiring vehicles to go as near the right-hand curb as practical was due to no want of care on the part of the trial court, but to the fact that it was offered at the close of all the testimony and at a time when it was not practicable to make an investigation of the statutes and decisions. The result illustrates the consequences of the rather undesirable practice of withholding important amendments until the trial is nearly closed. Defendant's counsel moved to dismiss the complaint notwithstanding the verdict, and, in the alternative, for a new trial, assigning various reasons. If we had not come to the conclusion that the complaint should be dismissed on the merits,

we should feel bound to direct that a new trial be granted for the reasons already given.

In the respondent's brief considerable attention is given to the question of the negligence of the defendant. Wherever the preponderance of the evidence may be on this subject, there was such proof that this question was for the jury, and it calls for no discussion on this appeal.

The case presents one quite remarkable feature. The plaintiff was examined adversely under sec. 4096 eighteen months or so before the trial, and in considerable detail gave his version of the manner in which the accident happened. The record of his cross-examination at the trial discloses more than a score of instances in which he declared that statements made by him in the former examination were false or not true or incorrect. We shall not elaborate on these changes, but it is enough to say that in many respects they were very important and in some respects changed the entire theory of the action. We do not discuss those conflicts in the plaintiff's testimony because that was a subject for consideration by the jury. The testimony of a witness may be confused, inconsistent, even so contradictory as to greatly impair his credibility, but it is generally the province of the jury, not that of the court, to determine its weight. It is the claim of counsel for the respondent, accepted by the trial court, that these changes in testimony may be explained by the nervous condition of the plaintiff on both examinations. It must be said, however, that the record shows that the witness is intelligent, that he seemed careful in making his answers, often asking for an explanation or a repetition of the question.

There is one very important feature in the testimony given on both examinations in which there is no conflict. It related to facts so simple and so unrelated to other facts that there could be no confusion or misunderstanding. The plaintiff testified that as he went along on the sidewalk on

King street he saw the defendant's car coming from the opposite direction and that it was going about twenty-five miles an hour. On the trial he said that when he first saw the car of the defendant he was about twenty-one feet from the near or west curb of Butler street and that the car was then about ninety feet from the lower corner on Wilson street. In both examinations he testified that he was then running and that he slackened his speed a moment, or a few seconds, after seeing the car. On both examinations he gave as his reason for slowing up that he thought the car might turn and hit him. It is his testimony that he first tried to slow up immediately after he stepped into Butler street; that when the collision occurred he was going a "medium trot" and the car turned so quickly that he could not stop and so tried to pass diagonally in front of it, in the course of which he was struck. It was his testimony that he expected the car to go up King street and that there were indications of its turning onto that street. But it was made perfectly plain in his evidence and often repeated that he thought it might turn into Butler street and that he slackened his speed for that reason. The plaintiff was twenty-two years old and had been a student at the State University nearly three years in mechanical engineering. For more than two years he had resided with an aunt on Franklin street, two blocks beyond Butler street, and was perfectly familiar with the surroundings at the place of intersection of the streets in question.

Many authorities are cited by the respective counsel, but none of them are closely analogous to the instant case. Since the plaintiff constantly saw the approaching car with its bright lights, there was abundant warning. He testified that the car was being driven at an excessive rate of speed, hence there was no reason for indulging in the presumption that the speed law would not be violated. The case does not come within the emergency doctrine that one who is

compelled to act at once in the presence of imminent danger may be excused for not choosing the best means of escape from the danger, because in this case the plaintiff placed himself in the place of danger by his own want of ordinary care. It cannot be said that there was excusable inadvertence on the part of the plaintiff or that his attention was diverted, since he was constantly looking at the car. Butler street is paved and two blocks from the capitol square. Like all streets near the center of the city it is much traveled, although not nearly so much of a thoroughfare as King street. The plaintiff, according to his testimony, had gained such momentum that he could not stop in time to avoid the collision. But it is self-evident that he could have stopped before he reached the place of danger, and since he thought that the car might turn into Butler street it was his duty, in the exercise of ordinary care, so to do.

There is much discussion in the briefs as to the exact location of the plaintiff and the automobile when and after the collision occurred. Since the testimony was practically undisputed that after the collision the body of the plaintiff was found within a very few feet of the easterly curb of Butler street, counsel for the defendant argue that it was demonstrated as a physical fact that the collision must have occurred on that side of the street. On the other hand, it is argued that the reverse is true because there was a great preponderance in the evidence that when the car stopped it was on the westerly side. In view of the excitement and confusion incident to such a collision in the nighttime, we do not attach to these circumstances so great importance as do counsel, although in some cases there may be physical facts of this kind which are of great significance. As already indicated, we do not base our decision on the inconsistencies and contradictions in the testimony of the plaintiff, but on his undisputed testimony as to his own conduct. Although the burden of proof of contributory negligence

rested on the defendant, when it appeared from the plaintiff's undisputed testimony that he was wanting in ordinary care, and we think it does so conclusively appear, the question became one of law for the court, and not for the jury.

Numerous other points are raised in the briefs which it becomes unnecessary to discuss..

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the complaint.

OWEN, J. (*dissenting*). I think the question of plaintiff's contributory negligence was a question for the jury. Whether he was negligent depended upon whether. he was in the exercise of such care as is usually exercised by the great mass of mankind under the same or similar circumstances. It was a rainy night, and he was running down the sidewalk. Certainly there was nothing unusual about that; in fact, it was conduct quite usual under such circumstances. That could not be held negligence—as a matter of law at least,—and I fail to perceive on what theory running across Butler street can be held negligence as a matter of law. The law is well established that one must look before crossing a railroad track. It is also well established that one must look up and down a street which one is about to cross, and take note of approaching vehicles. However, I know of no rule of law which requires any particular standard of conduct on the part of one traveling along a sidewalk on a busy thoroughfare approaching a crosswalk with reference to moving vehicles on the same street with him. He must look up and down the street he proposes to cross and take note of vehicles on that street. But that is not this case. Here he saw an automobile coming along the same street upon which he was running. He knew of course that it was within the range of possibility that that car might turn off the street it was then on, into Butler street, which he was about to cross. Some importance is attached in the opinion

to the fact that he testified he thought the automobile might turn into Butler street.   I do not see how that is important. Of course he knew it might turn into Butler street.   But what sort of duty does that lay on a pedestrian on the side-walk?   Is there any legal rule establishing a standard of conduct for him under such circumstances?   I know of none, except that he exercise the same degree of care that is usually exercised by the great mass of mankind under the same or similar circumstances.   If a person cannot attempt to cross a street intersecting the one on which he is travel-ing, without waiting to ascertain whether automobiles trav-eling on the same street with him will turn into the street which he is about to cross, then his further progress along a street heavily laden with automobile traffic would be sub-stantially if not completely arrested.   He necessarily knows that any one of them may turn into the street which he is about to cross.   It is clear in my mind that no rule of law charges a pedestrian under such circumstances with any particular standard of conduct, and that whether the plaint-iff in this case was in the exercise of due care was plainly a question for the jury.

I am authorized to state that Mr. Justice CROWNHART concurs in these views.