HALEY, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 15—February 9, 1932.*

For the plaintiff in error there was a brief by *V. J. O'Kelliher,* attorney, and *J. A. Martineau* of counsel, both of Oconto, and oral argument by *Mr. O'Kelliher.*

*Giles V. Megan,* district attorney of Oconto county, for the defendant in error.

OWEN, J. The testimony on behalf of the State is to the effect that Helen King is the niece of the defendant Leo Haley, and that sometime during the month of June, 1929,

her father took her to the home of Leo Haley, in Oconto county, Wisconsin, and arranged with said Leo Haley for her maintenance in his home; that soon after she became a member of the defendant's household he indulged in personal conversations with her in reference to sexual matters, and that between the latter part of August, 1929, and the 1st day of May, 1930, he had sexual intercourse with her upon four or five occasions. As is usual in such cases, the direct testimony bearing upon the issue of defendant's guilt was confined to the testimony of Helen King, who testified to the various acts of sexual intercourse, and to the testimony of the defendant, who denied that he had had intercourse with her upon any of the occasions as affirmed by Helen King. The appeal here challenges the sufficiency of the evidence to support the judgment of conviction.

It is conceded that under the law of this state the judgment of conviction may stand upon the uncorroborated testimony of the outraged female, but it is contended that her testimony given upon the preliminary hearing, and upon the two trials had herein, contains such glaring discrepancies as to discredit her testimony to the extent that it is unbelievable and furnishes no support for the judgment and sentence of conviction.

An examination of the record reveals certain discrepancies between the testimony given by Helen King upon the preliminary examination and upon the two trials had in this case, the first trial having resulted in a disagreement of the jury. But there is quite complete accord in the testimony given by her upon the two trials of the case, except in one particular which will be mentioned hereafter.

Upon the preliminary examination she testified to not more than three acts of intercourse with the defendant, affirming that the first act of intercourse occurred in the defendant's house in September, whereas upon the trial she testified

that the first act of intercourse occurred upon the front seat of an automobile, at an abandoned farm house some considerable distance from the defendant's home. There are also other discrepancies with reference to the circumstances under which the other acts of intercourse testified by her were had. As before stated, however, these discrepancies arise by a comparison of her testimony given upon the preliminary hearing and her testimony given upon the respective trials of the action. They do not arise from a comparison of her testimony given upon the two trials.

It appears that her testimony upon the preliminary hearing was given about three or four weeks prior to the time she gave birth to a child of which she was pregnant, allegedly, by reason of her intercourse with defendant. At the time she gave this testimony she was fourteen years of age. She was about to give birth to a child. She had never had any experience in a court room. Her surroundings were unfamiliar and necessarily distracting to her. The juvenile probation officer testified that she escorted her to the room where this preliminary hearing was had; that she was in a nervous condition amounting almost to a collapse. At the time of this hearing she was confined in a Sisters' home at Green Bay, awaiting the birth of her child. She did not swear to the original complaint. That was sworn to by her sister, and alleged the act of intercourse to have taken place on the 12th day of February, 1930, which accounts for the variance between the pleading and the proof. She came from Green Bay to Oconto county to testify in that preliminary hearing in the forenoon of the day upon which it was held. The district attorney examined her very briefly on behalf of the State. He asked her just eighteen questions, and he interrogated her only with reference to the act of intercourse mentioned in the complaint. Thereafter she was cross-examined by the attorney for the defendant.

This examination covered her entire relation with the defendant and revealed acts of intercourse other than the one alleged in the complaint. There is nothing to indicate that the district attorney had talked with her about these other acts of intercourse, or that she had them in mind before the time she was subjected to this cross-examination. It is apparent, therefore, that her answers given to questions propounded in the examination upon the preliminary hearing were not the result of deliberation or consideration on her part, and it is evident that in her then condition she was easily confused. She so testified upon the respective trials of the case, and claimed that her testimony upon such trials was the result of reflection and deliberation, whereas her testimony given upon the preliminary examination was due to her weak physical condition and the confused state of her mind.

Discrepancies in the testimony of witnesses given upon various occasions are not at all uncommon, and it has never been considered that such discrepancies necessarily render the testimony of such witnesses incredible so that a court may say that they are unworthy of belief. As was pointed out in *State v. Hintz,* 200 Wis. 636, 229 N. W. 54, a determination of the weight of the evidence rests with the jury. In this case the jury was charged that if they found that any witness had wilfully sworn falsely as to any material fact in the case, they were at liberty to disregard all the testimony of that witness. The contention that the testimony of Helen King was discredited to the extent as to render it entirely incredible was no doubt urged upon the jury, notwithstanding which they found the defendant guilty, and the trial judge, who had had the opportunity of observing the witnesses who testified in the case, approved their verdict.

It has already been stated that there was a marked discrepancy in her testimony upon the two trials in one certain

particular. It appears that when the wife of the defendant suspected that there was something wrong with Helen King because she had missed her menstruations for three or four months, she was taken to a physician for an examination. The physician testified that, after satisfying himself of her pregnant condition, he asked Helen with whom she had had intercourse, and she replied that she had intercourse with a man about twenty years of age. The doctor testified to that upon the first trial. Helen denied it. The doctor testified to the same effect upon the second trial, and upon that trial Helen admitted that she had made such statement to the doctor. She sought to excuse her denial of having made the statement on the first trial by saying that the defendant had always reminded her not to say anything about the acts of intercourse because he would go to jail. In view of the fact that upon the first trial Helen was not solicitous about keeping him out of jail, that would hardly seem a good reason for the denial of the doctor's testimony. The situation, however, presented a question which called for the scrutiny of the jury, and it was for them to determine whether the testimony in this respect so discredited her entire testimony as to render it unbelievable. There are circumstances in the case which tend to corroborate the testimony of Helen and to indicate the guilt of the defendant.

When the defendant and his wife ascertained that Helen was pregnant, no attempt whatever was made to discover who was responsible for the pregnancy. The defendant does not claim that he ever asked her who was responsible for her condition, nor is there any testimony to show that his wife made any attempt to ascertain the identity of the one who had committed the outrage. This was certainly unusual conduct on the part of those charged with the responsibility for the welfare of this child. It can very well be appreciated that they might not want her condition to be given

publicity in the community, but their conduct in refraining from asking her any questions concerning the identity of the guilty party is difficult to explain. It affirmatively appears that when Helen's older sister came to the defendant's home, and asked concerning the whereabouts of Helen, the defendant tried to conceal that fact. He told the older sister that if she had any word she wanted to communicate to Helen, or had anything that she wanted to send to Helen, to commit such message or article to him and he would see that she got it. These are, indeed, suspicious circumstances, and well might have been considered by the jury as corroborative of Helen's testimony.

Cases such as this are always difficult for a reviewing court. It is the established rule that the testimony of the outraged female, especially when supported by circumstances such as we have here, constitutes a sufficient basis for a verdict of guilt. *Cobb v. State,* 191 Wis. 652, 211 N. W. 785; *Richards v. State,* 192 Wis. 20, 211 N. W. 669. While we have made no attempt to set out the evidence in detail, it has received our most serious consideration, with the result that we can discover no reason for disturbing the judgment.

Before closing this opinion, however, we desire to remind the attorneys that rule 9 provides that the brief shall give "references to the pages of the record and printed case for each statement and proposition based on the record." Neither brief in this case refers us to the page either of the record or the printed case containing the authority for the statements of fact asserted. This has greatly added to the labors of the court in our investigation of the case. For example, it is stated in the brief of the plaintiff in error that "it is an undisputed fact in this case that Mr. Horne, district attorney of Forest county, is a bachelor, did not maintain a home and has no children, and that at no time did Helen King talk with him or have any such conversation as she outlined."

However, the brief does not tell us where the verification of this statement may be found in the record or in the printed case. This statement should have been followed in the brief by a reference to the page in the printed case or in the record where such statement may be verified. If this were a case in which costs are allowed, neither party would be entitled to costs for the printing of such a brief. We make this statement here to emphasize the fact that the rule is designed to facilitate the work of the court and that counsel fail in rendering the court the aid contemplated when they disregard this rule.

*By the Court.*—Judgment affirmed.