LEHMAN, Appellant, v. SENTRY INSURANCE COMPANY and others, Respondents.

*April 13—May 9, 1967.*

For the appellant there was a brief and oral argument by *Eugene A. Bitters* of Ripon.

For the respondents there was a brief by *Charles K. Wildermuth* of Berlin, and oral argument by *William E. Crane* of Oshkosh.

CURRIE, C. J. The sole issue on this appeal is whether there is any credible evidence in the record to sustain the jury's finding that Augun and Yedinak were causally negligent in the manner in which the unloading operations were carried on.

If there is any credible evidence which, under any reasonable view fairly admits of an inference that supports the jury's finding, neither the trial court nor an appellate court has any authority to change the jury's answer or findings.[1]

Resolving the issue presented necessitates a review of the evidence.

After the salvage material on Lehman's truck had been weighed at "Stobbe's Mill" he returned to the salvage yard whereupon Yedinak, who was busy with another truck and did not participate in the subsequent unloading of Lehman's truck, directed him to back to a specified area

[1] *Hupf v. State Farm Mut. Ins. Co.* (1961), 12 Wis. (2d) 176, 188, 107 N. W. (2d) 185; *Kanzenbach v. S. C. Johnson & Son, Inc.* (1956), 273 Wis. 621, 624, 79 N. W. (2d) 249; *Auster v. Zaspel* (1955), 270 Wis. 368, 370, 71 N. W. (2d) 417.

in the yard where the salvage was to be unloaded. At the designated area the truck was facing generally in a southwesterly direction.

The Dodge pickup truck had a box seven feet long and approximately four feet deep. Ordinarily the box would be only two feet deep. Sideboards which were affixed to the box accounted for the additional two feet of depth. On the day in question the truck was loaded with iron "pretty much level with the side boards but sloping down a bit" towards the rear. The larger pieces of iron, some of which were shafts five and one half to six feet long, were located toward the front of the truck box intermixed with smaller pieces of angle iron. At the rear of the box were two or three barrels containing still smaller "pieces of iron, like 1 pound or 2 pounds apiece, bolts and nuts, and other junk."

Immediately after Lehman backed to the point where the iron was to be unloaded Augun stepped up on the running board of the truck just in front of the right rear wheel and started unloading metal from that position by throwing it generally over his left shoulder. As Augun stood at that position he was facing south and conversing with Mrs. Lehman who was standing on the opposite or south side of the truck. Lehman went to the rear of the truck, lowered the tail gate and got up on the truck positioning himself a couple of feet toward the front of the box on the south side facing north and a little to the east of Augun. While at that position and before unloading anything he was hit on the left side of his face and nose by a piece of angle iron. On direct examination Lehman testified he did not know where the metal came from that hit him. Mrs. Lehman on direct examination testified as follows:

"*Q.* Now, immediately before your husband was injured, I want you to tell the Jury what you saw as best you recall? *A.* Mr. Augun was unloading and then my husband was getting on the truck, just on the truck,

didn't hold a piece of iron—all of a sudden a piece of iron Mr. Augun had in his hand hit my husband side of the face.

"*Q.* What was Mr. Augun doing? *A.* Unloading iron.

"*Q.* Was he doing it for some time? *A.* He was doing that before my husband got out of the truck.

"*Q.* Did you see where the piece of metal came from? *A.* Yes, I did.

"*Q.* Where did it come from? *A.* From Mr. Augun's hand."

Mrs. Lehman also testified that the piece of angle iron which struck her husband was six to seven feet in length and that Augun retained his grip on one end of it at the time it struck Lehman in the face.

Augun testified:

"Well, I was throwing [metal] off and I noticed Mr. Lehman was reaching to get this barrel, small cardboard barrel, half full, which he could lift. I noticed him getting ready to and I looked down by the wheel of the truck, as I turned back I looked and he was holding his nose and right away started to bleed."

According to Augun's testimony, Lehman was in a crouched position getting "a good hold on" a barrel. While the testimony does not disclose how far away Lehman was from Augun at the time Lehman was struck it seems probable that the distance between them was less than six feet.

Although Augun denied having in his hand the piece of metal that struck Lehman his testimony clearly reveals that he was throwing metal without looking in the direction he threw the same and that he was looking away from Lehman at the time Lehman was hit and manifestly could not know whether a piece of metal he had placed in motion either by swinging or throwing it had struck Lehman.

Lehman's testimony discloses that he had not at the time placed any metal in motion which could have caused

his injury. His testimony in that respect is corroborated by the testimony of Augun, and Mrs. Lehman. Lehman's only action with respect to unloading the metal at the time he was injured was to get "a good hold on" one of the barrels located at the rear of the truck which particular barrel was only half full of nuts, bolts and very small pieces of metal. That such action could have caused the extensive facial injury Lehman suffered is highly improbable.

The foregoing summary of the evidence demonstrates that there was sufficient evidence to support the jury's answer of "Yes" to the two first questions of the verdict. The trial court in its memorandum decision stated:

"The Court feels the answer to Question 1 is not the great weight of the evidence but against all credible evidence. The Court does not feel any credible evidence in this trial has been given to support the answer given to Question No. 1. There is testimony, Yes, but taking that testimony, the Court cannot see it being possible in the best light of that testimony for this accident to happen in any way as given. Looking at the testimony in its best light, the Court doesn't believe there is any credible evidence to sustain the verdict of the Jury."

Defendants' brief asserts that it is obvious that the trial court deemed Mrs. Lehman's testimony so contrary to all the other testimony and so inconsistent in itself that it was incredible. A review of her testimony reveals some inconsistencies and discrepancies. However they were not of such character so as to render her testimony incredible as a matter of law. As this court stated in *Smith v. Koch:* [2]

". . . discrepancies in the testimony of a witness do not necessarily render it so incredible that 'a court may say that they are unworthy of belief;' *Haley v. State,* 207 Wis. 193, 196, 240 N. W. 829; and though 'the testimony of a witness may be confused, inconsistent, even so con-

---

[2] (1945), 247 Wis. 551, 20 N. W. (2d) 566.

tradictory as to greatly impair his credibility . . . it is generally the province of the jury, not that of the court, to determine its weight;' *Stewart v. Olson,* 188 Wis. 487, 496, 206 N. W. 909." [3]

The trial court may well have concluded that the position in which Augun was standing with reference to Lehman and the consequent trajectory of the pieces of angle iron hurled by Augun were such as to render incredible Mrs. Lehman's testimony. However, both Augun's position with respect to Lehman and the trajectory of the hurled pieces of metal are grounded on testimony, and not incontrovertible physical facts. Consequently, they are not sufficient as a matter of law to render Mrs. Lehman's testimony incredible.

We would be faced with an entirely different issue if the trial court had granted a new trial in the interest of justice because the jury's answer to Question 1 of the verdict was against the great weight of the evidence.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the verdict and enter judgment thereon.

---

[3] Id. page 554. The law is well settled that a determination of the credibility of witnesses is a matter peculiarly for the jury. See *Burlison v. Janssen* (1966), 30 Wis. (2d) 495, 501, 141 N. W. (2d) 274.