CITY OF MILWAUKEE, Appellant, vs. RUPLINGER, Respondent.

*December 9, 1913—January 13, 1914.*

*Municipal ordinances: Validity: Penalty for act made a misdemeanor by statute: Keeping unlicensed junk shop: "Fine" collectible in civil action: Appeal by city: Licenses: Delegation of legislative power to mayor.*

1. Although a statute makes an act a misdemeanor, a municipal ordinance enacted under proper legislative authority may also make it punishable by a fine or penalty collectible in a civil action.

2. So *held* as to the keeping of a junk shop without license, made a misdemeanor by ch. 337, Laws of 1887, and also made punishable by fine by an ordinance of the city of Milwaukee enacted pursuant to its charter (sec. 3, subch. IV, ch. 184, Laws of 1874, as amended by ch. 74, Laws of 1891).

3. The term "fine" or "punished by fine" in a city ordinance implies a mere forfeiture or penalty collectible by civil action in the name of the city; and in such action the city has the right to appeal from the result of the trial.

4. A city ordinance providing for the licensing of junk shops and that all applications for licenses thereunder "shall be made to the mayor, who may grant or refuse to grant such license as to him may seem best for the good order of the city," was not invalid as a delegation of legislative or arbitrary power. It conferred upon the mayor administrative duties only, to be exercised in a reasonable and impartial manner, and gave him no authority to say whether the business of keeping junk shops should be permitted or not, or to discriminate between persons under the same or similar circumstances. *Little Chute v. Van Camp*, 136 Wis. 526, distinguished.

Appeal from a judgment of the municipal court of Milwaukee county: A. C. Backus, Judge. *Reversed.*

Prosecution for violating a municipal ordinance regulating the business of junk dealers.

The cause was commenced in the district court by filing of a complaint and issuance of a warrant, as in a civil action for the recovery of a penalty. In due course, the accused was found not guilty by the verdict of a jury. The city of *Milwaukee,* still dealing with the matter as a civil action, appealed to the municipal court where, in due course, the action was dismissed because the offense charged, as thought, was a misdemeanor and so the city had no right to appeal from a judgment of acquittal.

For the appellant there were briefs by *Daniel W. Hoan,* city attorney, and *Arthur H. Bartelt,* assistant city attorney; and oral argument by *Mr. Bartelt.*

For the respondent there were briefs by *Austin, Fehr & Gehrz,* and oral argument by *G. G. Gehrz.*

MARSHALL, J.  The charter of the city of *Milwaukee,* at the time of the enactment of the ordinance under which the action was commenced, by sec. 3, subch. IV, ch. 184, Laws of 1874, as amended by ch. 74, Laws of 1891, provided that the common council of said city shall "have authority—anything in any general law of this state to the contrary notwithstanding—by ordinances, resolutions, by-laws, rules or regulations" "to tax, license, control and regulate . . . all keepers or proprietors of . . . junk shops . . . and to fix and regulate the amount of license . . . and to prescribe the time for which such licenses shall be granted, and to provide and enforce penalties for carrying on" said business.  There existed ch. 337, Laws of 1887, providing that the mayor of the city of *Milwaukee* may, in circumstances mentioned, grant licenses for carrying on the business of keeping junk shops and prohibiting any one from carrying on such business "without being duly licensed, under penalty of fifty dollars fine for each and every day he or she shall exercise or carry on said business without such license," and further providing that "every person violating any of the provisions of this act shall be punished by a fine not exceeding one hundred dollars, nor less than ten dollars, or by imprisonment in the house of correction of Milwaukee county for a term not exceeding six months, or by both such fine and imprisonment."  The later act did not refer to the earlier one.  It is not likely that the legislature intended by the act of 1887 to take away from the city the power it then had to regulate by ordinance the business of keeping junk shops and to enforce the regulation by penalties; but, if it did, such power was restored by the act of 1891.

Pursuant to the latter act the common council of the city of *Milwaukee,* prior to the occurrence giving rise to the prosecution, duly ordained by ch. XXVII of the City Ordinances of 1906 that "No person or persons shall . . . within the city of *Milwaukee* . . . keep a junk shop . . .

without being first thereunto duly licensed as herein provided."

The prosecution here was for a violation of that ordinance. The court below seems to have thought that, since the state statute applicable to *Milwaukee* made the keeping of a junk shop without a license a misdemeanor, the prosecution was, really, thereunder, notwithstanding it was, in form, for violation of the city ordinance. It evidently was supposed that the ordinance was inconsistent with the state statutes, making the keeping of such a shop in the city of *Milwaukee* a misdemeanor, and therefore it did not apply as the common council could not repeal the statute. The answer is that, as we have indicated, if the legislature by the act of 1887 purposed taking from the common council of the city of *Milwaukee* the power to regulate the junk-shop business by ordinance, it, later, restored that power. It further seems to have been thought below, that the act of 1887 was a state statute covering the subject of keeping junk shops and making the keeping of such in violation thereof a misdemeanor, and, therefore, the city, notwithstanding its broad powers, as before indicated, could not regulate such business by ordinance; that if the keeping of such a shop without a license was a misdemeanor under the act of 1887, it cannot be, at the same time, a *quasi*-criminal offense under the ordinance, penalized by a fine collectible by civil action. That is ruled otherwise by *State ex rel. Milwaukee v. Newman,* 96 Wis. 258, 71 N. W. 438. It was there said:

"It seems to be the clear weight of authority that an act may be a penal offense under the laws of the state, and that further penalties, under proper legislative authority, may be imposed for its commission by municipal by-laws or ordinances, and the enforcement of the one would not preclude the enforcement of the other."

That was followed in *Ogden v. Madison,* 111 Wis. 413, 422, 87 N. W. 568, and *State v. Hamley,* 137 Wis. 458, 119

N. W. 114. That is to say, an act may constitute a double offense; it may violate a statute making it a misdemeanor and it may violate a municipal regulation making it a *quasi-*criminal offense.

It may have been thought that, because the ordinance uses the term "punished by fine," the council did more, or attempted to do more than to merely provide that a violator should suffer a penalty collectible by civil action, as in ordinary cases; that he should be punished as guilty of a crime. That is ruled to the contrary by *Oshkosh v. Schwartz,* 55 Wis. 483, 13 N. W. 552; *Ogden v. Madison, supra,* and other cases. The mere term "fine" or "punished by fine" in a penal statute does not necessarily imply a misdemeanor. It is otherwise as to the terms "fine and imprisonment" and "fine or imprisonment." The former term in a city ordinance implies a mere forfeiture or penalty collectible by civil action in the name of the city, in which case the city has the right of appeal from the result of a trial by express statute, and as indicated in *Milwaukee v. Beatty,* 149 Wis. 349, 135 N. W. 873.

The foregoing covers all matters decided by the court below; but it is suggested that the ordinance is void because the counsel attempted thereby to practically abdicate its power to license persons to conduct the junk business by transferring the whole discretionary power in respect to the matter to the mayor, affording him authority to grant or refuse a license to any person, regardless of the facts.

True, the language of the ordinance is quite general in that it provides that "all applications for license under this ordinance shall be made to the mayor, who may grant or refuse to grant such license as to him may seem best for the good order of the city." Manifestly, if by any fair construction of that language all that was left to the mayor was the exercise of mere administrative functions in a reasonable manner, then counsel's point is not well taken. There is no

principle better established than that a law may be made,
complete in itself, and be left to some officer or tribunal to
determine the facts requisite to application of the enactment
to a given case.

Now it seems that the ordinance in question easily admits
of a construction conferring on the mayor administrative du-
ties, only, to be exercised in an impartial manner.    The
language must be construed in connection with the whole or-
dinance of which it forms a part.    The scheme was to make
the keeping of a junk shop, without first obtaining a license,
an offense against a city regulation, punishable by a penalty
as provided expressly in the city charter.    The only thing
left for the mayor to do was to pass upon candidates for mu-
nicipal favor.    The amount of the license fee, when the
time shall begin, and when it shall end, and all the details
are expressly provided for.    Necessarily, application for the
license has to be made to some one and some one has to super-
vise its issuance.    Those are matters of administration.
Necessarily, also, if the city desires to discriminate as to the
character of the persons whom it will permit to operate junk
shops within its limits, that is matter of administration.
Evidently, for the purpose of such discrimination and that
only, it was provided that applications for licenses shall
be to the mayor, "who may grant or refuse to grant such li-
cense as to him may seem best for the good order of the city."

The ordinance dealt with the keeping of junk shops as a
legitimate business.    Therefore it is not to be thought that
there was any purpose to clothe the mayor with power to per-
mit or suppress such business.    The idea embodied in the
ordinance, by reasonable, if not necessary inference, is that
any suitable person, considering all things bearing on the
question, for the operation of the junk business, shall, if he
desires, upon compliance with the ordinance, have a license
to run such business.    Manifestly, the question of suitability

must depend upon the existence or non-existence of facts and the facts must vary somewhat according to character, temperament, age, history, and many other things. The idea that the purpose of the ordinance was to confer upon the mayor power to act arbitrarily so as to suppress the business of keeping junk shops instead of regulating it, or to pass favorably upon one candidate for a license and unfavorably upon another under the same or similar circumstances, or to do otherwise than, having the "good order of the city" as the objective, pass reasonably upon the suitability of a candidate for license, within the field of that discretion which is administrative as distinguished from legislative, and acts upon judgment as distinguished from acting upon mere whim, prejudice, or caprice, is repellent to the whole scheme embodied in the ordinance and must be rejected.

This case differs widely, on its facts, from *Little Chute v. Van Camp,* 136 Wis. 526, 117 N. W. 1012. The distinction was there recognized between that administrative power which has to do with executing law and the legislative authority which has to do with making law. Authority to determine, arbitrarily, whether a saloon shall be closed or not was said to be legislative and discriminatory. Here authority was not conferred on the mayor to say whether the business of keeping junk shops should be permitted or not, and if permitted, to discriminate between persons under the same or similar circumstances. The licensing of such business was provided for, as before indicated, in all its details, leaving only to the judgment of the mayor as regards suitability of candidates.

It is not always clear as to whether a power is legitimately conferred because administrative or illegitimately bestowed because legislative. Therefore precedents are of little use in determining classification. They are useful in illustrating the principle here involved, but it is too elementary to

require illustrating.    In testing an enactment by such principle, all reasonable doubts must be resolved in favor of the legislative body having conferred administrative power only.

It follows from the foregoing that the judgment must be reversed and cause remanded for further proceedings according to law.

*By the Court.*—So ordered.