STATE EX REL. BLUEMOUND AMUSEMENT PARK, INC., Appellant, vs. MAYOR OF THE CITY OF MILWAUKEE and another, Respondents.

*January 15—February 9, 1932.*

For the appellant there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

For the respondents there was a brief by *John M. Niven,* city attorney, and *Leo A. Mullaney,* assistant city attorney, and oral argument by *Mr. Mullaney.*

FRITZ, J. The license in question was issued under a city ordinance, which was part of a chapter in which there was also the following provision:

"The judge of the district court may, in his discretion, revoke and annul any license issued under this chapter, upon the conviction of any person licensed hereunder of any crime, or of the violation of any city ordinance, which in the opinion of said judge should work such revocation. Any license issued under this chapter may also be revoked by the mayor, in his discretion, for any improper conduct of the person so licensed. The mayor may also revoke any such license whenever he shall consider it necessary or expedient for the good order of the city so to do."

On behalf of the relator it is contended that, under that provision, the power of the mayor to revoke a license is limited to revocation upon the conviction of the licensee of any crime, or his violation of any city ordinance. Those limitations apply only to the power of revocation which the provision vests in the judge of the district court. In prescribing the power of the mayor, the provision expressly vests in him authority to revoke, in his discretion, for "any improper conduct" of the licensee; and also "whenever he shall consider it necessary or expedient for the good order of the city so to do." However, if the ordinance is thus construed, relator contends that the proposed delegation of the power of revocation is void because the provision fails to fix any standard by which the mayor is to determine whether the facts proven are within a standard duly prescribed by a legis-

lative body, and that, consequently, the provision unlawfully leaves or delegates to the mayor, a quasi-judicial officer, the legislative function or power of determining such standard. In so contending, relator relies primarily on the decisions in *State ex rel. Garrabad v. Dering,* 84 Wis. 585, 54 N. W. 1104, and *Little Chute v. Van Camp,* 136 Wis. 526, 117 N. W. 1012. In the first of those cases an ordinance was held void which prohibited street parades excepting when permitted by the written consent of the mayor; and in the second case an ordinance was held void which required saloons to close at 11 p. m. unless special permission was given by the village president. In neither of those cases was there any provision in the ordinance then under consideration which is equivalent to the provisions in the ordinance in the case at bar. Manifestly, a somewhat different legal problem would have been presented if the ordinances in those cases had prescribed some such standard as in the case at bar, viz. that the mayor or village president could refuse permission because of "any improper conduct" of the applicant, or "whenever he shall consider it necessary or expedient for the good order of the city so to do."

If those ordinances had so provided they would have been valid under the decision in *Milwaukee v. Ruplinger,* 155 Wis. 391, 145 N. W. 42. In that case this court upheld an ordinance for licensing junk dealers, which, without any other provision prescribing any other standard, provided that the mayor "may grant such licenses as to him may seem best for the good order of the city." That provision was held to leave to the mayor merely the administrative function of determining the facts upon which depended the determination of whether the granting or refusal of the license was best for the good order of the city. In sustaining that ordinance this court said:

"True, the language of the ordinance is quite general in that it provides that 'all applications for license under this

ordinance shall be made to the mayor, who may grant or refuse to grant such license as to him may seem best for the good order of the city.' Manifestly, if by any fair construction of that language all that was left to the mayor was the exercise of mere administrative functions in a reasonable manner, then counsel's point is not well taken. There is no principle better established than that a law may be made, complete in itself, and be left to some officer or tribunal to determine the facts requisite to application of the enactment to a given case."

In *Lerner v. Delavan,* 203 Wis. 32, 37, 233 N. W. 608, 610, this court said:

"That the ordinance does not prescribe standards in greater detail than it does, is not fatal to its validity. In ordinances of this sort the council is faced with the practical difficulty of defining with precision in advance the conditions under which permits shall be granted. In *State v. Taubert,* 126 Minn. 371, 148 N. W. 281, 282, it is said: 'The varying circumstances and conditions to be taken into account cannot be accurately anticipated in advance, and uniform and unvarying restrictions previously prescribed are liable to prove inadequate or inapplicable.' "

Those decisions are well within the bounds of similar decisions, which indicate the extent to which it has been held proper to go in upholding administrative power to determine who may be entitled to a license, under various licensing laws, even when such power is vested in a single individual. *Gundling v. Chicago,* 177 U. S. 183, 20 Sup. Ct. 633; *Wilson v. Eureka City,* 173 U. S. 32, 19 Sup. Ct. 317; *Davis v. Massachusetts,* 167 U. S. 43, 17 Sup. Ct. 731; *New York ex rel. Lieberman v. Van De Carr,* 199 U. S. 552, 26 Sup. Ct. 144.

So, in the case at bar, in so far as the ordinance authorizes revocation by the mayor "whenever he shall consider it necessary or expedient for the good order of the city so to do," the common council has, by its legislative act, provided for revocation of the license whenever necessary or expedient for

the good order of the city, and has left to the mayor only the administrative function of ascertaining the existence of facts because of which revocation is necessary or expedient for such good order. On the other hand, by virtue of the very terms of the ordinance under which relator claims the privilege of continuing to conduct an exhibition, the license which he obtained was subject to revocation for any reason which was stated in that ordinance. The only authority for the issuance of the license was the ordinance, and, in obtaining and accepting a license under its provisions, the relator was bound by, and his license was subject to, the conditions as to revocation which were prescribed by that ordinance. Consequently, when the relator obtained his license from the mayor, who, under the very terms of the ordinance, could grant or refuse such license, as seemed best to him for the good order of the city, the license thus obtained was subject to the power expressly reserved by ordinance for the revocation of such license, whenever the mayor considered it necessary or expedient for the good order of the city. As was said in 3 McQuillin on Municipal Corporations (2d ed.) § 1108:

"The ordinance providing for the granting of the license may also prescribe reasonable conditions under which the license may be revoked by the municipal authorities, and a license accepted under an ordinance providing that it may be revoked at pleasure or within the discretion of a specified municipal officer or board is binding on the licensee."

In judicially passing upon the question as to whether the facts warranted the mayor in concluding that the good order of the city rendered it necessary or expedient to revoke the license, it must be noted, at the outset, that upon *certiorari* the presumption is that the official decision is correct, and if upon any reasonable view of the evidence it will support such decision, it cannot be disturbed, for the weight or credibility

of the evidence cannot be reviewed. *State ex rel. Howe v. Lee,* 172 Wis. 381, 178 N. W. 471. Furthermore, in particular reference to the judicial review of the determination of the officer or official body intrusted with the duty of the issuance or revocation of licenses, it must be noted that such determination "should not be disturbed or set aside except for clear and manifest abuse of discretion." *Lerner v. Delavan, supra.* As was said in *Application of Larkin Co. v. Schwab,* 242 N. Y. 330, 151 N. E. 637 :

"An applicant is deprived of his rights only when unreasonable discrimination is shown to dictate the refusal. The courts may not interfere with discretion as to when exception shall be made, nor formulate standards to be used in the exercise of that discretion; they may interfere only when it is clearly shown that refusal is based solely upon grounds which as matter of law may not control the discretion of the council. . . . As the field of discretion of the council in regard to circumstances which dictate granting of consent is enlarged, opportunity for the intervention of the courts becomes restricted. Into the field of legislative or administrative discretion the courts may not enter."

The exhibition which relator desired to continue to conduct was called a marathon dance. A similar exhibition had been conducted by the same parties during the preceding year, and another party was presently also seeking to continue to conduct such an exhibition. At the conclusion of the hearing conducted by the mayor, in revoking the license he said :

"I regret exceedingly that any one invested money here. I think I am acting within my powers. I do not act arbitrarily. My stand has been uniform. I have refused at least six applications, with one exception, when I did not realize it was a marathon dance, but I assumed responsibility for it, and the evidence that was presented here by police officers about this previous marathon warrants the conclusion that the affair should not be held for the reasons offered in the

hearing. I am disposed to revoke the permit. . . . I think taking fifty cents from people and giving them nothing in return is not right. There are inherent things in marathons that do not appear in the ordinary athletic contests. When the dancers get tired and the longer the marathon endures, the worse it gets."

Although it is true that the evidence was primarily in relation to evils which were generally incidental to such exhibitions, as observed by police officials at marathon dances previously conducted by the relator, and presently by a stranger, we are satisfied, upon reviewing the record, that the trial court rightly concluded that, "upon any reasonable view of the evidence presented, the mayor was justified in revoking the license." Consequently, there was no abuse of discretion because of which the revocation by the mayor can be disturbed upon *certiorari*.

On behalf of relator it is also contended that the ordinance, under which relator obtained the license which he claims to be entitled to retain without revocation, is void because that ordinance does not fix the amount of the license fee, but leaves the power to fix the amount thereof to the discretion of the mayor. There may be occasion for considerable doubt as to whether the common council can delegate to the mayor the legislative power of fixing the amount of the license fees. However, relator in seeking on *certiorari* to have the revocation of its license set aside, and thus to re-establish its license and the resulting privilege, under the ordinance, as a valid enactment, cannot, while thus insisting on the exercise of a privilege by virtue of the ordinance, also assert that the ordinance under which he claims such privilege is invalid. As was said in *Pera v. Shorewood*, 176 Wis. 261, 186 N. W. 623:

"He came into court relying upon the ordinance as the valid basis for his claim. Having instituted his action upon the sole basis of the validity of the ordinance, he cannot now

seek to maintain it by asserting the invalidity of that which enabled him to come into court. This case is parallel with that of *Hurley v. Commission of Fisheries,* 257 U. S. 223, 42 Sup. Ct. 83, . . . where it was held that a plaintiff could not claim under a statute and assail it in the same proceeding. To do so would enable parties to make use of a statute as a valid one during one stage of an action, and then, upon a certain point therein being reached, continue it upon the basis that it is invalid because from thence on it seems to be more advantageous to claim its invalidity. This is a species of legal somersault or suicide that courts will not tolerate. Parties cannot pursue two inconsistent remedies in the same action. 9 Ruling Case Law, p. 958."

Furthermore, on *certiorari* the validity of the ordinance, in so far as the license fee is concerned, is not here for review. The inquiry on this *certiorari* proceeding is only in relation to the mayor's revocation of the license which the relator claims he is entitled to continue to have. That inquiry does not involve any review of the original issuance of the license, or the validity of the ordinance under which relator obtained the license in the first instance. Adapting the statement in *State ex rel. R. Connor Co. v. Wallman,* 110 Wis. 312, 315, 85 N. W. 975, the validity of the ordinance, in so far as it relates to the issuance of the license, is not here for review. The *certiorari* is to review the action of the mayor in revoking the license, and not the act of issuing the license in the first instance. That original act may have been entirely without basis in that the ordinance providing for the license may have been unconstitutional and void, but we cannot now determine that question because the proceedings for the original issuance of the license are not before us for review.

*By the Court.*—Judgment affirmed.