## BERGER ENGBERG v. N. H. DEBEL AND OTHERS.[1]

May 3, 1935.

No. 30,274.

*Harry H. Peterson*, Attorney General, and *Harry W. Oehler*, Deputy Attorney General, for appellants (respondents below).

*Jenswold, Jenswold & Dahle*, for respondent (relator below).

STONE, JUSTICE.

*Mandamus* wherein defendants, members and secretary of the industrial commission, appeal from an order sustaining a general demurrer to their answer to the petition.

[1]Reported in 260 N. W. 626.

Plaintiff's application to the commission for a license to operate an employment agency in Duluth was denied only because, in the judgment of the commission, "there were now existing in the City of Duluth sufficient employment agencies to supply the needs of employers and employees of the community." The denial upon that ground was put upon the authority supposedly granted to the commission by L. 1929, c. 293 (3 Mason Minn. St. 1934 Supp. § 4254-3) which amended L. 1925, c. 347, § 3 (1 Mason Minn. St. 1927, § 4254-3) by giving to the commission the power and imposing upon it the duty to refuse to license an employment agency whenever the commission finds "that the number of licensed employment agents or that the employment agency operated by the United States, the state or by the municipality or by two or more thereof jointly in the community in which the applicant for a permit proposes to operate is sufficient to supply the needs of employers and employes."

The one question is as to the constitutionality of that statute. Is it denial of due process? The answer we find ready made in controlling decisions of the Supreme Court of the United States. In Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. ed. 1034, that tribunal held employment agencies subject to regulation. But in Adams v. Tanner, 244 U. S. 590, 597, 37 S. Ct. 662, 61 L. ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973, decision was that regulation cannot lawfully become prohibition. The involved statute of the state of Washington, while not attempting expressly to put an end to private employment agencies as such, did prohibit their getting compensation from employes served by them. That was considered equivalent to outright prohibition of the whole business, and so an undue restriction of the liberty, "guaranteed by the Fourteenth Amendment, to engage in a useful business."

In Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. ed. 913, 56 A. L. R. 1327, there was nullified a New Jersey statute which attempted to declare, among other things, that the business of conducting employment agencies was affected with a public interest. In both Adams v. Tanner, 244 U. S. 590, and the Ribnik case, the long-standing and seemingly ineradicable abuses so long characteristic of the private management of employment agencies were dwelt

upon at length. That the business has a bad record was recognized in both cases even by the majority. But in Ribnik v. McBride [277 U. S. 358], it was said in explanation of the decision:

"To urge that extortion, fraud, imposition, discrimination and the like have been practiced to some, or a great, extent in connection with the business here under consideration, or that the business is one lending itself peculiarly to such evils, is simply to restate grounds already fully considered by this court. These are grounds for regulation but not for price fixing, as we have already definitely decided."

Those who operate private employment agencies either will not or cannot eliminate the fraud and other abuses which so long and so flagrantly have characterized the business. Reform from the inside becoming impossible, or at best hopeless, those who are for state monopoly of the business have material for a persuasive argument. We cannot agree that it should be beyond legislative power to declare the business so much a matter of public interest as to subject it, not only to ordinary regulation, but also to price fixing and, where needed, to such limitations as are sought to be imposed by the statute upon which defendants base their position.

Constitutionally the case is in the same category as New State Ice Co. v. Liebmann, 285 U. S. 262, 273, 52 S. Ct. 371, 375, 76 L. ed. 747. There the business of sale and distribution of ice, concededly "subject to some measure of public regulation," was yet held immune to the legislative attempt of Oklahoma to classify it as one subject to a public interest so as to make its conduct lawful only when under the authority of a government grant or franchise. "The aim" was held [285 U. S. 279] to be "not to regulate the business, but to preclude persons from engaging in it." The attempted restriction of the business to those operating under license was held an unreasonable or arbitrary interference or restriction upon a business not constitutionally subject to such interference by government. The authority to prohibit those not licensed from conducting an otherwise lawful business was of such a character that it could not be saved, the court said [285 U. S. 279, 280], by calling it "experi-

mental." That was because "there are certain essentials of liberty" so buttressed by the constitution that they cannot be dispensed with by any state in the interests of experiment.

We are in the field of federal constitutional law. Our duty is to apply the law as declared by its final arbiter, the Supreme Court of the United States. That we do cheerfully. Because of the rule of the cases mentioned, particularly Adams v. Tanner, 244 U. S. 590, we must and do hold that it was beyond the constitutional competence of our legislature to confer upon the industrial commission power to deny to the petitioner, for the reason assigned by the order, the right to operate an employment agency. We decide it wholly as a federal question and consider the statute, 3 Mason Minn. St. 1934 Supp. § 4254-3, for the reason indicated, a denial of equal protection and due process of law.

Order affirmed.

DEVANEY, CHIEF JUSTICE (dissenting).

It is agreed generally that private employment agencies organized for a profit may be regulated. Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. ed. 1034; Moore v. City of Minneapolis, 43 Minn. 418, 45 N. W. 719; note in 56 A. L. R. 1340. But it has been held that regulation may not become prohibition, Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973, and that the business of operating an employment agency is not so affected with public interest as to permit the state to fix prices charged for services rendered. Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. ed. 913, 56 A. L. R. 1327. In both the Adams and the Ribnik cases three justices dissented, principally upon the ground that since the business of operating a private employment agency for profit is a nefarious one, productive of many evils, it can lawfully be prohibited or strictly regulated. With these dissents I agree. Further, however, I do not believe that the majority opinions in these cases, strictly construed, control the case at bar. The prohibition referred to in the Adams case is a prohibition of the entire business. In that case the statute in question would have put out of business all private employment agencies in the state of Washington. In the case at

bar the prohibition is as to a single agency, not as to the entire business. The statute here involved permits the industrial commission to refuse to license a single agency in a given community if, in its discretion, the number of agencies in that particular community is at the time sufficient to care for the needs of the persons living therein. This type of prohibition is nothing more than regulation, which admittedly is lawful. This is not prohibition in the sense in which the term was used in the Adams case. It is regulation by limiting numbers, not prohibition of the entire business.

Why is regulation in the case at bar not a valid police measure? The more agencies in existence in a particular community the keener and more bitter the competition. Such competition inevitably leads to the vicious practice of charging unreasonably high fees, of sending men away from the community for a few days' work in order to produce a fee, of splitting fees with an employer, and other dishonest and corrupt dealings. Admittedly, the state can regulate the business by prohibiting such practices. Why, then, can it not choose as a means of regulation to limit the numbers so that the conditions which lead to and produce the above abuses will not be present? If the field is not overcrowded, men can make an honest living and the abuses will disappear.

The state industrial commission can use this means of regulation justly and without prejudice. Reasonableness is the test. I believe the demurrer should be overruled.