GRAEBNER, Appellant, vs. INDUSTRIAL COMMISSION, Respondent.

*February 10—March 8, 1955.*

For the appellant there were briefs and oral argument by *William A. Chatterton,* attorney, and *W. Perry Neff* of counsel, both of Madison.

For the respondent there was a brief by the *Attorney General* and *Gordon Samuelsen,* assistant attorney general, and *Kenneth M. Plaisted,* attorney, and oral argument by *Mr. Samuelsen* and *Mr. Plaisted.*

GEHL, J. Plaintiff contends that the effect of the provisions of the statute which authorize the commission to deny a license upon the ground that the existing agencies are sufficient to supply the needs of employers and employees is to place in its hands power to decide arbitrarily, and uncon-

trolled by any prescribed rules of action, who may and who may not engage in the employment business.

The business of conducting an employment agency is a legitimate one in which all persons similarly situated are lawfully entitled to engage, but it is one which is so far concerned with the welfare of the public that it is within the police power of the state to regulate it. *State v. Howard W. Russell, Inc.,* 181 Wis. 76, 194 N. W. 43. Such power carries with it the right to require that one who desires to engage in the business shall have a license therefor. It is also the established law that a legislative act may validly confer upon an agency of the government authority to grant or to withhold a license, provided that, where discretion is to be exercised by such agency, proper standards or guides for the use of the discretion are established by the act and that the act may not be construed as conferring upon the agency the power to exercise its discretion unreasonably, arbitrarily, or capriciously. *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N. W. 882.

Plaintiff contends that the effect of the provision, which authorizes the denial of a license when the commission finds that the existing agencies are sufficient to supply the needs of employers and employees, is to grant to the commission the power to prohibit rather than to regulate the business and relies upon *Adams v. Tanner,* 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336; *Engberg v. Debel,* 194 Minn. 394, 260 N. W. 626. The ruling in the *Adams Case* is not applicable. In that case there was involved a statute of the state of Washington which purported to prohibit absolutely the operation of employment agencies. The court held the statute invalid. Our statute does not prohibit—its purpose is to regulate. In the *Engberg Case* there was involved a statute almost identical in its provisions with ours. The court held it to be violative of the Fourteenth amendment. The latter case might constitute persuasive argument in support of plaintiff's con-

tention were it not for the fact that we are bound by our own precedents.

*Milwaukee v. Ruplinger,* 155 Wis. 391, 395, 145 N. W. 42, was a prosecution for violation of a Milwaukee ordinance regulating the business of junk dealers. The common council had adopted an ordinance providing that no person should keep junk shops in the city without being thereunto licensed; that application for license should be made to the mayor who might "grant or refuse to grant such license as to him may seem best for the good order of the city." The ordinance was attacked as being an unlawful delegation of power. The court refused to declare it invalid.

An ordinance concerning the operation of junk yards and the granting of license therefore was also involved in *Lerner v. Delavan,* 203 Wis. 32, 233 N. W. 608. The case did not have to do with the question of delegation of power but it may be considered in relation to the question whether its effect is to permit the council to destroy what was conceded to have been a legitimate business. The ordinance was attacked as invalid for the reason that it provided that the common council might issue a permit *in its discretion* and furnished no standard by which the council might exercise its discretion in granting or refusing permits for the operation of the business. The ordinance was sustained as being valid.

In *State ex rel. Bluemound Amusement Park v. Mayor,* 207 Wis. 199, 201, 240 N. W. 847, the court held valid an ordinance relating to the operation of public exhibitions. The power to revoke a permit issued therefore was granted to the mayor "whenever he shall consider it necessary or expedient for the good order of the city so to do."

The grant of power in each of these cases is expressed in language exceedingly broad and could, if construed absent the limitations placed upon it by the courts, readily be interpreted as authorizing the arbitrary exercise of power. The court has said, however, that ordinances such as these

confer upon the licensing authority administrative duties only which are to be exercised in an impartial manner and that they must be construed in connection with the whole ordinance and the scheme adopted to regulate the business or occupation concerned.

These cases were decided upon the theory that in each a study of the entire ordinance disclosed that tests and standards of qualifications upon which the agency was to act in granting or withholding a license were prescribed and that the specific provision authorizing the act of the agency must be construed in view of the object which prompted the licensing act. So construed, the ordinance or statute is not to be interpreted as granting power to act arbitrarily or capriciously.

The statute involved in the instant case must be given similar construction. The standards prescribed are that the license is to be refused if the character of the applicant makes him unfit to be an employment agent or when the premises whereon he purports to operate is found to be unfit for use, or if the community in which he proposed to operate is adequately served by existing agencies. Upon the authority of the Wisconsin cases to which we have referred we must hold that the statute, in so far as it empowers the commission to grant or to refuse a license under the circumstances prescribed, is valid.

Plaintiff contends that the order of the commission is unsupported by substantial evidence in view of the entire record submitted. Sec. 227.20 (1) (d), Stats. He contends that the word "needs" as used in sec. 105.13 must be interpreted to mean that the applicant must show, in addition to a demand by the public, a dissatisfaction by the public with the service presently available with the end in view of improving both the quality and the quantity of the service rendered. We do not construe the statute as meaning that the applicant must show a dissatisfaction by the public with the service presently

available. We agree that the commission shall consider both the quality and the quantity of the service rendered and whether or not that would be improved by the grant of additional permits. In our opinion, the finding has the required support.

The manager of the Milwaukee office of the state employment service testified as to the effectiveness of the operations of that agency. An officer of an existing private employment agency testified that the number of job placements is declining; that an increased number of agencies does not increase placements, that the present capacity of the placement industry exceeds the load upon it, and that he had seen no evidence that an applicant needing employment had been unable to obtain competent assistance. The operator of another private agency testified that the existing facilities are adequate. An officer of the A. F. of L. testified that the existing services are adequate to handle the Milwaukee situation, as did an officer of the C. I. O. union.

Of course, the testimony of the witnesses offered in opposition to plaintiff's application was disputed in some respects, but the matter of determining that dispute was for the commission. A question of fact was presented and since it is supported by credible evidence we may not disturb it. *M. & M. Realty Co. v. Industrial Comm.* 267 Wis. 52, 64 N. W. (2d) 413.

*By the Court.*—Judgment affirmed.

FAIRCHILD, C. J. (*dissenting*). We are not dealing with subjects such as public health, welfare, or nuisances. We are concerned with the right of an individual to choose a calling and to carry on a business consistent with that calling. The law under consideration may provide for proper regulation. The portion of the law which I consider unconstitutional is that portion of sec. 105.13, Stats., which purports to give to the Industrial Commission authority to deny a

qualified person the right to engage in a lawful business because he seeks to establish himself in a community in which, in the opinion of the commission there is a sufficient number engaged to supply the needs of employers and employees. And it reads that if "it is found and determined that the number of licensed employment agents or that the employment agency operated by the United States, the state, or by the municipality or by two or more thereof jointly in the community in which the applicant for a permit proposes to operate is sufficient to supply the needs of employers and employees." With that portion of the statute eliminated, there still remains a complete statute for the regulation of such businesses. Standards may be fixed and the applicant for a license be regulated in all particulars to match up to those standards. The case now before us is one in which the applicant is found duly qualified, but permission to carry on his business is denied by the Industrial Commission because in its opinion the field is supplied.

The constitutional aspects of administrative law have been developed by statute and decision, and there has been indicated in a general way the line of demarcation between the kind of legislative power which may be delegated and the kind which may not. The power to declare whether there shall be a law to determine the purpose or policy to be achieved and to fix the limits within which the law shall operate is vested in the legislature and may not be delegated. An administrative agency may be authorized to exercise the necessary power to carry into effect the legitimate and general purpose defined by the legislature. *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929. However, a statute authorizing the Industrial Commission to deny to qualified applicants a right to operate a business on the ground that the field in which the operation is intended to be carried on is already sufficiently occupied is unconstitutional because of a denial of equal pro-

tection and due process of the law. *Engberg v. Debel,* 194 Minn. 394, 260 N. W. 626.

While the Industrial Commission did afford appellant an opportunity to be heard before denying his application, it is to be noted that the statute does not contain a provision requiring such a hearing. However, because of the hearing afforded by the commission to the appellant, we make no point of that but do regard the statute as deficient in its structure. *Coe v. Armour Fertilizer Works,* 237 U. S. 413, 35 Sup. Ct. 625, 59 L. Ed. 1027. The majority opinion of this court affirms a ruling by the circuit court which deferred to the dissenting opinion of the eminent jurists, STONE, HOLMES, and BRANDEIS, in *Ribnik v. McBride,* 277 U. S. 350, 48 Sup. Ct. 545, 72 L. Ed. 913. One may well agree that the dissent referred to is sound, for it limits itself to regulation of the evils which were under consideration and were brought about by individuals whose characters were not consistent with good conduct. In the dissenting opinion it seems clear that regulation was held to be proper only for the purpose of fixing standards of conduct and fitness, and in the review of the cases there considered the concern was over the fraudulent charges of commissions by certain agencies. But the doctrine of that dissent stops short of excluding an applicant from certain territory and preventing him from carrying on a lawful business simply because he will be a competitor of those there presently engaged. There is no holding that one, who is qualified equally with others under the standards prescribed to operate a lawful business, is to be denied the opportunity to do so. The part of the dissenting opinion overlooked by the court below and by the majority here reads (p. 372) : "It is of course true that the enactment of a particular type of legislation, even though general, and a widespread and competent opinion that it is wise and necessary, do not establish its constitutionality."

We are concerned with what may be styled trends which may lead to a controlled economy directly affecting individ-

uals in choosing their calling, profession, or occupation. There are enterprises which, because of their natural characteristics affecting public welfare, are properly subject to limitation, but the basis of that limitation is not simply that of competition between like enterprises. How much of a step is it from the matter now before us to the thought that a commission could be created and empowered to determine that those who pass the board of bar commissioners may not be permitted to practice in a community where the commission thinks there are already plenty of lawyers? Would it be considered reasonable under any stretch of imagination to say to the law graduates of the University of Wisconsin and the law graduates of Marquette University: "You have qualified, and as soon as opportunity is presented, you may be permitted to practice, but for the present, because of crowded conditions in certain communities, we will withhold the privilege."

It used to be quite clear that the framers of our state and federal constitutions did not incorporate blindly the provisions guaranteeing life, liberty, and the pursuit of happiness. And it is equally clear today that it was not intended by those framers of the constitutions that modern efforts to insure integrity in administrative conduct of business should violate those provisions to the extent of classifying by restriction those who may and those who may not engaged in a lawful calling to be selected by an individual. Competition and individual enterprise have not been entirely written off as obsolete. A conservatism that clings to the broad fundamentals written into our Bill of Rights is well-grounded liberalism. True, the public may be protected against the machinations of men lacking in integrity, but that does not mean that one of several qualified men shall be permitted to enter a legitimate field of enterprise and the opportunity denied to others. In 1 Wait, Practice at Law, in Equity, page 36, we find the doctrine expressed as follows:

"'Competition in trade is not actionable. In such a case there is no wrong, for the act done is the mere exercise of an undoubted right which belongs to every member of society. So, if a fisherman fits out a boat with lines and nets, and goes to fish in the high seas, and another fisherman comes and fishes beside him, and with tempting baits, or other contrivances, draws away the fish from the lines and nets of the first comer, with a view of catching them himself, an injury may be done; but there is no tort or wrong, for the one had as much right to fish, and to use fair and reasonable means to catch fish, as the other; . . .'" *Young v. Hichens,* 6 Q. B. 606.

I am authorized to state that Mr. Justice BROADFOOT and Mr. Justice STEINLE concur in this dissent.