HARDING, Appellant, v. INDUSTRIAL COMMISSION, Respondent.*

*November 30, 1960—January 10, 1961.*

* Motion for rehearing denied, without costs, on March 7, 1961.

For the appellant there were briefs by *Glassner, Clancy & Glassner* of Milwaukee, and oral argument by *William E. Glassner, Jr.*

For the respondent Industrial Commission the cause was argued by *Beatrice Lampert,* assistant attorney general, and *Patrick Putzi,* attorney, with whom on the brief was *John W. Reynolds,* attorney general.

FAIRCHILD, J. Ch. 105, Stats., deals with the regulation of employment agents, and the issuance of licenses to operate

as an employment agent for compensation. Certain administrative functions are delegated to the Industrial Commission.

Sec. 105.01, Stats., defines an "employment agent," in part as including persons "which furnish to persons seeking employment, information enabling or tending to enable such persons to secure the same, or which furnish employers seeking laborers or other help of any kind, information enabling or tending to enable such employers to secure such help, or which keep a register of persons seeking employment or help . . ."

Sec. 105.05, Stats., prohibits engaging in the business of an employment agent for profit, or receiving any compensation for services as an employment agent without first having obtained a license.

Sec. 105.13, Stats., requires the Industrial Commission to issue licenses "and to refuse to issue such license whenever, after due investigation, the commission or a majority of the members thereof finds that the character of the applicant makes him unfit to be an employment agent, or when the premises for conducting the business of an employment agent is found upon investigation to be unfit for such use, or whenever, upon investigation by the commission, it is found and determined that the number of licensed employment agents or that the employment agency operated by the United States, the state or by the municipality or by two or more thereof jointly in the community in which the applicant for a permit proposes to operate is sufficient to supply the needs of employers and employees."

Sec. 105.15, Stats., provides in part that, "Such investigations, classifications, and orders shall be made pursuant to the proceeding in secs. 101.01 to 101.28, which are hereby made a part hereof, so far as not inconsistent with the provisions of secs. 105.01 to 105.15. . . . Said orders shall be subject to review in the manner provided in ch. 227."

Sec. 101.01 (7), Stats., defines "order" as including "any decision . . . made by such commission."

Sec. 101.15, Stats., provides that any interested person may petition for a hearing on the reasonableness of an order. Sub. (3) authorizes the commission to confirm its previous determination without hearing if the issues raised have theretofore been adequately considered, but requires a hearing "if such hearing is necessary to determine the issues raised."

The attorney general points out that sec. 105.13, Stats., requires only a finding upon "investigation" as a basis for refusal, and argues that a hearing is not required by law. The commission, however, has uniformly held hearings on similar applications, and the commissioner conducting this hearing stated in response to a question by counsel that the commission had made no investigation, and would confine its consideration to the evidence presented at the hearing.

Although the provisions of secs. 105.13, 105.15, and 101.15, Stats., read together might sustain an argument that the procedure upon applications for this type of license is governed by sec. 101.15, we do not decide that question. Even if sec. 101.15 be applicable, we could only conclude that the commission did not consider that the issue of need in the Milwaukee community had previously been adequately considered.[1] Thus a hearing would be required under sec. 101.15.

If, on the other hand, the refusal of a license under sec. 105.13, Stats., be considered the final decision of the commission, without any possibility of gaining a hearing under sec. 101.15, sec. 105.13 should be construed as requiring a hearing before refusal of a license. Notwithstanding the use of the term "investigation" as the basis for the findings, the commission has proceeded in the past as if the word were

[1] See *Park Bldg. Corp. v. Industrial Comm.* (1960), 9 Wis. (2d) 78, 93, 100 N. W. (2d) 571, for an instance where we held that no hearing was required by law on the ground that the particular issues had previously been adequately considered.

"hearing." Doubts would arise as to the validity of excluding persons from a lawful business by reason of determinations of fact reached without a hearing. Both the administrative practice, and the doubts referred to would support the construction that the investigation must take the form of a hearing.

In this case, we are concerned only with the third ground for refusal specified in sec. 105.13, Stats., *i.e.,* whether the needs of employers and employees in the Milwaukee community are sufficiently supplied.

The validity of empowering the Industrial Commission to refuse a license upon a finding that such needs are sufficiently supplied by existing agencies was sustained in *Graebner v. Industrial Comm.* (1955), 269 Wis. 252, 68 N. W. (2d) 714. In discussing the standard for the exercise of the commission's power, the court said, at page 258:

"We agree that the commission shall consider both the quality and the quantity of the service rendered and whether or not that would be improved by the grant of additional permits."

If the application of the plaintiff, Miss Harding, be viewed merely as a proposal to add to the number of facilities available in Milwaukee to employees seeking placement in secretarial or clerical jobs, or employers seeking employees in those classifications, the *Graebner Case* would require affirmance. Virtually all the testimony summarized at page 258 of the *Graebner* opinion appears in the transcript of the hearing in the present case. The present record also shows that there are three, or perhaps four licensed employment agencies in the Milwaukee area which concern themselves with secretarial and clerical jobs. It also appears that an office workers' labor union maintains a register for those seeking employment, and that there are schools which provide some placement service. We could not say that the commission's finding was unsupported if it appeared that Miss Harding,

if licensed, would simply supply more of the service presently available.

Miss Harding claims, however, and offered proof to show that her agency will offer a type of service which is not presently offered in the community. The commission made no specific finding that her services would be substantially the same as those already available, nor that there is no need for the type of service which she proposes to render and which would make her service different from the others. As we see it, the issue upon review is whether, assuming that either of those findings is implied in the finding that the needs of the community are already sufficiently supplied, there is evidence in the record to support them. Thus we reach a consideration of the testimony offered.

Miss Harding had, at the time of the hearing, been operating for approximately six months in the business of furnishing temporary office workers to business or industrial firms under an arrangement where the firm paid Miss Harding for the work performed and Miss Harding in turn paid wages to the workers. It seems to be conceded that this type of operation does not constitute carrying on the business of an employment agent for compensation. At times it happened that workers whom she supplied to a particular firm obtained a permanent job with that firm, but in such instances Miss Harding charged no fee by reason of the permanent job's being secured. She testified that she has referred applicants and employers seeking permanent placement service to licensed agencies. What she proposes to do if licensed is to provide permanent placement service as well as her present temporary service and to charge the applicant a fee if a satisfactory permanent job is secured.

Miss Harding has had academic training in journalism and business administration, and has taken courses in personnel and executive training. She has filled several positions in business where she had supervision of other employees.

From 1955 to 1956, she was employed by one of the licensed employment agencies in Milwaukee, and from 1956 to 1958 by a firm engaged in providing temporary office workers, apparently the same type of business in which she is now engaged for herself. Some of her familiarity with the operations of employment agencies in Milwaukee was gained as an employee of the licensed agency, and some as an incident to her work with temporary placement.

She described the procedure which she has used in connection with temporary placement, and which she proposes to use for permanent placement as follows: She gives the applicant for employment an aptitude test, discusses the results, and the type of work for which applicant is best suited. She also gives judgment, spelling, and grammar tests, stenographic or typing tests, discusses the results with the applicant, and matters of grooming, etiquette, and courtesy. She endeavors to learn from prospective employers any special qualifications for the desired employees. She proposes to use the temporary employment of her applicants in various types of jobs, together with her guidance and counseling of them as steps toward placement in a permanent position, helping the applicant with typing speed, spelling, and other things as may be required, and making an attempt to find the "right job for the individual, not just any job." She placed in evidence copies of the various test forms used by her, and these are entitled: "Business Fundamentals and General Information," "Personnel," "Secretarial," "Bookkeeping," "Typewriting," "Machine Calculation," and "General Office Clerical." She also placed in evidence a number of pamphlets which she makes available to applicants, containing information on secretarial work, spelling, typing, and public speaking. She testified that no private licensed agency in Milwaukee does this type of testing.

She produced a dozen witnesses. Some were people who were employers or represented employers and whose work in-

volved the hiring of office workers. In substance, they testified that Miss Harding tests and screens applicants whereas the other agencies do not; that an employer is more likely to get properly qualified employees from an agency which tests and screens them; and that there is a need in the community for such an agency. Other witnesses had sought employment through the presently licensed agencies, or the Wisconsin State Employment Service. They testified that these other agencies did not test applicants. Two testified that they had been sent to be interviewed for unsuitable jobs, and that this would not have happened if there had been individual attention. One witness had previously been employed by the same licensed agency for which Miss Harding had worked. She testified that testing, counseling, and guidance service is not performed by the agencies now operating.

There was no testimony tending to show that Miss Harding's plans for her agency were impractical, nor that there was any reason to suppose that she would not carry them out if granted a license. Although representatives of two of the existing licensed agencies were present at the hearing and made statements to the effect that there was no need for more agencies, they did not offer testimony that either of them provided testing, counseling, or guidance service. The manager of the Milwaukee office of the Wisconsin State Employment Service was present, and certain statistics presented by him were placed in the record by stipulation, but he did not testify. There was no testimony that individual testing, guidance, or counseling was offered by the state employment service, nor by any other agency not required to be licensed.

We conclude that there is no substantial evidence to support any of the following propositions: (1) That Miss Harding would not provide testing, counseling, and guidance service in her operations as an employment agent; (2) that such service is supplied by others; and (3) that there is no

need for such service in the Milwaukee community. We recognize that sec. 105.13, Stats., impliedly vests in the commission some degree of discretion to determine when existing services are "sufficient" to supply the needs. We are of the opinion, however, that its discretion does not extend to determining, against undisputed testimony, that there is no need for the type of service described in the record.

An applicant for a license is required to file a bond (sec. 105.06, Stats.), pay a minimum fee (sec. 105.07 (2)), and a schedule of fees and all rules affecting fees (sec. 105.11). Miss Harding did these things when she applied, but it appears that the check and bond were returned to her after denial of her application. It does not appear that the commission determined whether the proposed fees and rules are reasonable. The majority of the court are of the opinion that as to all issues under sec. 105.13, including the issue of need in the community, the commission is bound by the present record, without reopening the hearing for additional evidence. Accordingly, if a proper bond is again filed, the minimum fee paid, and if the commission determines that the applicant's proposed fees and rules are reasonable, the license must be issued.

One matter which is not now relevant to the result deserves comment. It appears from the record that the commission interprets ch. 105, Stats., as authorizing the issuance of licenses only in the name of an individual. The application blank so provides, and it is clear from statements made in the record by the commissioner who presided that this is so. It also appears from such statements that if a licensed individual ceases to conduct the business, and a member of his family intends to continue, it has been customary for the commission to issue a license to the new individual as a matter of course. It would seem that since the statutes provide that a license

shall not be transferable, a new application and consideration of qualifications would be required. In answering the attack of counsel for Miss Harding upon one of the existing licenses because issued in this fashion, the attorney general argues that the license had been issued to a corporation; that some years ago one man ceased to be president and was succeeded by his son; that the corporation obtained a renewal of its license (as is required annually) and that no transfer (or original issuance) had occurred when the son became president. Although some of the language, particularly of sec. 105.05, Stats., seems to imply that a "person, firm, corporation, or association" may be licensed, it is evident that the commission has construed the statute as permitting only the licensing of individuals. This question should have the consideration of the commission. Certainly the argument that a particular license was, in fact, issued to a corporation, is inconsistent with the position taken by the commission, that it is not authorized to issue such licenses.

*By the Court.*—Judgment reversed, cause remanded with directions to reverse the decision of the Industrial Commission and to remand the proceeding to the commission for further proceedings, not inconsistent with the opinion filed herein.

The following opinion was filed March 7, 1961:

PER CURIAM (*on motion for rehearing*). The commission asserts that our mandate directs the circuit court to exercise legislative power in remanding the proceeding to the commission. We said (p. 282):

"The majority of the court are of the opinion that as to all issues under sec. 105.13, including the issue of need in the community, the commission is bound by the present

record, without reopening the hearing for additional evidence. Accordingly, if a proper bond is again filed, the minimum fee paid, and if the commission determines that the applicant's proposed fees and rules are reasonable, the license must be issued."

The commission argues that we have tacitly overruled prior decisions, particularly *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 21 N. W. (2d) 5. We have not done so.

The framework of sec. 105.13, Stats., the statute involved in this case, is significant. Application was made August 15, 1958, and the hearing held the following October. The statute compelled issuance of the license unless one or more of three findings were made. The commission declined to make either the first or second finding adverse to applicant. We have decided that its adverse finding on the third subject was not supported by evidence. In the absence of a statutory ground for refusal (and assuming bond requirements and the like were fulfilled), the statute itself required the commission to issue a license.

The motion for rehearing is denied.